[No.S033486. Nov. 23, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD E. BRANSFORD et al., Defendants and Appellants.

**COUNSEL**

Gregg L. McDonough, Public Defender, under appointment by the Municipal Court, and Stephan Van Decker, Deputy Public Defender, for Defendants and Appellants.

Margaret H. Marr, Ed Kuwatch, John Halley, Esther R. Sorkin, Plourd & Breeze, John W. Breeze and Douglas E. Gee as Amici Curiae on behalf of Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Frederick R. Millar, Jr., Patti W. Ranger, Deputy Attorneys General, William E. Haynes, District Attorney, and Albert J. Hackworth, Deputy District Attorney, for Plaintiff and Respondent.

Michael R. Capizzi, District Attorney (Orange) and E. Thomas Dunn, Jr., Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**MOSK, J.—** ■ We granted review in these consolidated matters to consider whether the trial court should have allowed defendants convicted of driving with 0.08 percent or more of alcohol in their blood to challenge

their breath-test results by showing that their personal ratio of breath-alcohol concentration to blood-alcohol concentration (the "partition ratio") differed from the standard partition ratio that breath-testing machines use to convert breath-alcohol readings into blood-alcohol equivalents. As will appear, we conclude the trial court correctly excluded such evidence, and we therefore affirm the judgment of the Court of Appeal to that effect.

Defendant Donald E. Bransford was arrested for drunk driving on August 18, 1991. He took a breath test, which showed a blood-alcohol concentration of 0.09 percent. A jury convicted him on October 22, 1992, of violating former Vehicle Code section 23152, subdivision (b) (hereafter section 23152(b)),[1] i.e., driving a vehicle while having 0.08 percent or more, by weight, of alcohol in the blood.

Defendant Ralph Maldonado was arrested on or about June 27, 1991. Although the record does not specifically so state, he also took a breath test. He was convicted on September 24, 1991, of violating section 23152(b).

Both defendants contended on appeal to the appellate department of the superior court and, following certification, to the Court of Appeal that the trial court improperly excluded the above described evidence of their personal partition ratios. The Court of Appeal rejected the contention and affirmed the judgments.

In *Burg v. Municipal Court* (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732] (*Burg*), we reviewed the history of the Legislature's initial responses to the problem of drunk driving, and upheld the first California statute to criminalize the act of driving with a specified percentage of alcohol in the blood.[2] We held that the statute defined the "new and separate offense" of driving with a prohibited blood-alcohol concentration (35 Cal.3d at p. 265), and that it was a valid exercise of the police power and was not void for vagueness (*id.* at pp. 266-273).

In 1989, in the immediate predecessor to the statute under which defendants were convicted, the Legislature lowered the prohibited blood-alcohol concentration from 0.10 percent to 0.08 percent.[3] Because the statute continued to define the offense solely in terms of "grams of alcohol per 100

---

[1] All statutory references are to this code unless otherwise specified.

[2] The statute made it unlawful for any person "who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle . . . . [¶] For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood." (Stats. 1981, ch. 940, § 33, p. 3578.)

[3] The statute thus made it unlawful for any person "who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. [¶] For purposes of this subdivision,

milliliters of blood," the prosecution continued to convert breath-test results into equivalent readings per 100 milliliters of blood. The relevant regulation of the Department of Health Services required that such conversion use a standard partition ratio treating the amount of alcohol per 210 liters of breath as equivalent to the amount of alcohol per 100 milliliters of blood. (Cal. Code Regs., tit. 17, § 1220.4, subd. (f).)[4]

Many variables, however, can affect the actual ratio of an individual's breath-alcohol concentration to blood-alcohol concentration. These variables include body temperature, atmospheric pressure, medical conditions, sex, and the precision of the measuring device. (Thompson, *The Constitutionality of Chemical Test Presumptions of Intoxication in Motor Vehicle Statutes* (1983) 20 San Diego L.Rev. 301, 327; Annot. (1991) 90 A.L.R.4th 155, 160.) Changes in these variables may result in a difference between an individual's actual blood-alcohol level and the blood-alcohol level determined by applying the standard partition ratio to the breath-test results.

Courts therefore allowed defendants charged under the predecessor statute to attack breath-test results on the basis of this variability. Defendants were initially allowed to demonstrate only that their personal partition ratio differed from the standard partition ratio. (See, e.g., *People* v. *Pritchard* (1984) 162 Cal.App.3d Supp. 13, 17 [209 Cal.Rptr. 314]; *People* v. *Herst* (1987) 197 Cal.App.3d Supp. 1, 3-4 [243 Cal.Rptr. 83].) They would do so by simultaneously measuring their breath-alcohol concentration and blood-alcohol concentration over a period of time. (See, e.g., *People* v. *Cortes* (1989) 214 Cal.App.3d Supp. 12, 21 [263 Cal.Rptr. 113] (*Cortes*); *People* v. *Lepine* (1989) 215 Cal.App.3d 91, 94 [263 Cal.Rptr. 543] (*Lepine*).) Later courts also allowed defendants to demonstrate that partition ratios differ among individuals generally. (See, e.g., *Lepine, supra,* 215 Cal.App.3d at p. 101.) Defendants would usually do so by having an expert testify that the standard partition ratio is merely an approximation and that different individuals have different personal partition ratios. (See, e.g., *Lepine, supra,* 215 Cal.App.3d at p. 101; *Cortes, supra,* 214 Cal.App.3d at p. Supp. 19.)

Defendants here, however, were convicted under section 23152(b), not its predecessor. By the time of their arrests, the Legislature had amended the predecessor statute by adding the following italicized language:

"It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

---

percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood." (Stats. 1989, ch. 479, § 3, p. 1691.)

[4]The regulation is actually written in terms of the amount of alcohol in 2,100 milliliters of breath and the amount of alcohol in 1 milliliter of blood.

"For purposes of this subdivision, percent, by weight, of alcohol *in a person's blood* shall be based upon grams of alcohol per 100 milliliters of blood *or grams of alcohol per 210 liters of breath.*" (Stats. 1990, ch. 708, § 1, italics added.)

Speaking largely through their amici curiae, defendants briefly contend the amendment made no substantive change to the predecessor statute but merely codified the existing administrative definition of the standard partition ratio. (Cal. Code Regs., tit. 7, § 1220.4, subd. (f).) They argue that section 23152(b) on its face continued to define the offense in terms of *blood*-alcohol concentration, and urge that the addition of the phrase, "in a person's blood," in the second paragraph reinforces this reading. Although the statute did specify that percent, by weight, of alcohol "shall be based on" grams of alcohol per 210 liters of *breath*, defendants argue that this phrase merely provided an alternate means for calculating the *blood*-alcohol concentration.

Although it is possible to read the statute this way, we believe there is instead only one reasonable manner in which to do so, i.e., the Legislature intended the statute to criminalize the act of driving either with the specified blood-alcohol level or with the specified breath-alcohol level. The second paragraph provided two distinct definitions, "For purposes of this subdivision," of the phrase, "percent, by weight, of alcohol in a person's blood." (Stats. 1990, ch. 708, § 1.) Under the second definition—i.e., "grams of alcohol per 210 liters of breath"—section 23152(b) prohibited the act of driving with 0.08 percent or more of blood alcohol *as defined by* grams of alcohol in 210 liters of breath.

The Legislature originally considered the addition of the phrase, "or grams of alcohol per 210 liters of breath," while enacting the bill that became the version of section 23152(b) effective January 1, 1992. (Sen. Bill No. 1119 (1989-1990 Reg. Sess.) § 25, enacted as Stats. 1989, ch. 1114, § 25, p. 4079.)[5] Although the legislative history of that bill only briefly discusses the Legislature's reason for the change, one legislative digest does state that the bill would *"Define* [blood-alcohol concentration] as alcohol concentration expressed in . . . grams of alcohol per 210 liters of breath." (Assem. Com. on Pub. Safety, Dig. of Sen. Bill No. 1119 (1989-1990 Reg. Sess.), as amended May 15, 1989, p. 3, italics added and deleted.)

---

[5]In 1989, the Legislature enacted, effective January 1, 1992, the successor to the statute under which defendants were convicted. (Stats. 1989, ch. 1114, § 25, p. 4079.) The phrase, "or grams of alcohol per 210 liters of breath," first appeared there. The Legislature enacted the statute under which defendants were convicted *after* it enacted the successor statute (Stats. 1990, ch. 708, § 1); that statute also contained the quoted phrase. Although the statute under which defendants were convicted remained in effect only until January 1, 1992, essentially the same language is in force today.

The legislative history of the bill that became the version of section 23152(b) under which defendants were convicted (Assem. Bill No. 4318 (1989-1990 Reg. Sess.), enacted as Stats. 1990, ch. 708, § 1) lends further support to this interpretation. For example, the Court of Appeal buttressed with a legislative analysis of the bill its conclusion that section 23152(b) criminalized driving with either the stated blood-alcohol or breath-alcohol level. That analysis characterized the "key issue" of the bill as whether driving under the influence should "be statutorily *defined* in terms of the concentration of alcohol found in the breath when breath analysis is used." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4318 (1989-1990 Reg. Sess.) p. 1, italics added.)[6] It observed that attacks by defendants on the partition ratio "result in expensive and time consuming evidentiary hearings and undermine successful enforcement of driving under the influence laws." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4318, *supra*, at p. 2.) It stated that the amendments would "*eliminate the need for conversion* of a breath quantity to a blood concentration of alcohol . . . ." (*Id.* at p. 1, italics added.)[7]

To read the statute to allow the prosecution to establish the offense solely by proof of a prohibited breath-alcohol level, moreover, promotes the state's interest in reducing the danger to the public caused by those who drink and drive. (See *Burg*, *supra*, 35 Cal.3d at pp. 261-262.) It will increase the likelihood of convicting such a driver, because the prosecution need not prove actual impairment. (American Bar Association Criminal Justice Section, Rep., Drunk Driving Laws and Enforcement (1986) p. 31.) Adjudication of such criminal charges will also require fewer legal resources, because fewer legal issues will arise. (*Id.* at p. 32.) And individuals prosecuted under

---

[6]See also Assembly Committee on Public Safety, Digest of Assembly Bill No. 4318 (1989-1990 Reg. Sess.) page 2 ("statutorily defining driving under the influence of alcohol in terms of the concentration of alcohol found in the breath when breath analysis is used"); Assembly Office of Research, third reading analysis of Assembly Bill No. 4318 (1989-1990 Reg. Sess.) page 1 ("statutorily defin[es] driving under the influence of alcohol in terms of the concentration of alcohol found in the breath"); Senate Rules Committee Analysis of Assembly Bill. No. 4318 (1989-1990 Reg. Sess.) page 1 (same).

[7]See also Assembly Committee on Public Safety, Digest of Assembly Bill No. 4318, *supra*, page 2 ("Eliminate the need for conversion of a breath quantity to a blood concentration of alcohol"); Assembly Office of Research, third reading analysis of Assembly Bill No. 4318, *supra*, page 1 (same); Senate Rules Committee, Analysis of Assembly Bill No. 4318, *supra*, page 1 (same).

Amicus curiae observe that the Legislative Counsel's Digest refers to "conforming changes." (See Legis. Counsel's Dig., Assem. Bill No. 4318 (1989-1990 Reg. Sess.).) They argue that the quoted phrase proves the Legislature merely added for the sake of consistency the phrase, "or grams per 210 liters of breath," to the language that referred only to milliliters of blood; they suggest it did so to simplify the conversion from breath-alcohol to blood-alcohol concentration, but they fail to explain how this incorporation simplifies the conversion. They also assert the Legislature believed the federal government required states to statutorily—as opposed to administratively—define the partition ratio, but they offer no support for this claim.

such a statute will be less likely to contest the charge. (*Ibid.*) It is true the Legislature could have drafted the statute more clearly. (E.g., U. Veh. Code (1992 rev.) § 11-902, subd. (a)(1);[8] *State* v. *McManus* (1989) 152 Wis.2d 113 [447 N.W.2d 654, 657] [former Wisconsin statute].) Nevertheless, we hold as we did in *Burg, supra*, 35 Cal.3d at page 265, that section 23152(b) defined a particular type of prescribed conduct: it set forth an alternative definition of the offense of driving with a prohibited blood-alcohol concentration, i.e., driving with 0.08 percent or more of blood alcohol as defined by grams of alcohol in 210 liters of breath.[9]

■      Defendants contend section 23152(b) unconstitutionally created an irrebuttable conclusive presumption that the amount of alcohol in 210 liters of breath was equivalent to the amount of alcohol in 100 milliliters of blood. (See *Ulster County Court* v. *Allen* (1979) 442 U.S. 140 [60 L.Ed.2d 777, 99 S.Ct. 2213]; *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450].) In *Burg, supra*, 35 Cal.3d 257, we rejected a similar challenge to the predecessor to section 23152(b), which set forth the then-new offense of driving with a blood-alcohol level of 0.10 percent or more. We held that the statute "does not create a conclusive presumption of intoxication . . . . Instead, the statute defines, in precise terms, the conduct proscribed." (35 Cal.3d at p. 265.) We observed that "In other states that have enacted a statute similar to section 23152, subdivision (b), the courts have drawn the same conclusion, notably the Washington Supreme Court which declared, 'The statute does not presume, it defines.' (*State* v. *Franco* (1982) 96 [Wn.2d] 816 [639 P.2d 1320, 1323]; see also *State* v. *Abbott* (1973) 15 Ore.App. 205 [514 P.2d 355, 357] [question is not whether defendant is intoxicated, but whether he had the specified level of alcohol in his blood]; *State* v. *Gerdes* (S.D. 1977) 252 N.W.2d 335, 335-336 [by proscribing driving with 0.10 percent blood alcohol, the legislature is 'stating an offense']; cf. *People* v. *Dillon* (1983) 34 Cal.3d 441, 472-476 [194 Cal.Rptr. 390, 668 P.2d 697] [Pen. Code, § 189 does not presume malice; it defines first degree felony murder as an offense in which malice is not an element]." (*Ibid.*) Similarly, here section 23152(b) did not presume that the driver was intoxicated or "under the influence"; instead, it defined the substantive

[8]The Uniform Vehicle Code provides in the cited section that a person shall not drive a vehicle when "The alcohol concentration in such person's blood *or breath* is 0.08 or more based on the definition of blood and breath units in [the definition section] . . . ." (U. Veh. Code, § 11-902, subd. (a), italics added.) The definition section provides that "Alcohol concentration *shall mean* either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (*Id.*, § 11-903, subd. (a)(5), italics added.)

[9]Although Illinois's drunk driving statute is worded differently, the court in *People* v. *Capporelli* (1986) 148 Ill.App.3d 1048 [103 Ill.Dec. 864, 502 N.E.2d 11] interpreted it similarly. That court held that "The statute has provided two ways to measure the level of blood alcohol concentration; one by blood, by means of a blood test; the other by breath, by means of a breathalyzer test." (*Id.* at p. 14.)

offense of driving with a specified concentration of alcohol in the body. Thus, it did not create an irrebuttable conclusive presumption.

Defendants also contend section 28, subdivision (d), of article I of the California Constitution—declaring that trial courts shall not exclude "relevant evidence" from criminal trials except as provided by statute—mandated that this evidence be admissible. But evidence of the variability of partition ratios was not relevant evidence because, once again, section 23152(b) defined the offense without regard to such ratios. Defendants further contend the court's refusal to consider evidence of the variability of partition ratios denied them their rights to confrontation and counsel under the Sixth Amendment to the United States Constitution. It is clear, however, that "The accused does not have an unfettered right [under the Sixth Amendment] to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." (*Taylor* v. *Illinois* (1988) 484 U.S. 400, 410 [98 L.Ed.2d 798, 811, 108 S.Ct. 646].) Because section 23152(b) defined the offense on the basis of grams of alcohol per 210 liters of breath, the court correctly ruled such evidence irrelevant and therefore inadmissible. Moreover, defendants remained free to challenge the breath-test results on other, relevant grounds, including the reliability of the machine and the manner in which the test was administered.[10]

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

**KENNARD, J.,** Concurring and Dissenting.—Understandably alarmed by the carnage caused by drunk drivers on California's highways, the Legislature has toughened this state's laws directed at those who drive a vehicle

---

[10]In their brief in this court defendants raise several additional issues. They make an equal protection argument. They also claim that "an erroneous conversion of an accurate breath-alcohol test resulted in an inaccurate blood-alcohol test," presumably implying the trial court should have allowed them to demonstrate that error. And they contend that under Penal Code section 1020—providing that matters of fact tending to establish a defense are admissible on a guilty plea—they should have been allowed to present evidence of their personal partition ratios. Defendants did not timely raise these issues in the Court of Appeal. (Cal. Rules of Court, rule 29(b)(1).)

Defendant Maldonado, who was also convicted of driving under the influence of alcohol (§ 23152, subd. (a)), contends the court's failure to allow into evidence the fact of the variability of partition ratios converted the permissive presumption set forth in the standard instruction on the inference of intoxication (CALJIC No. 12.61 (5th ed. 1994 pocket pt.) p. 74) into an impermissible mandatory presumption. Because he failed to complain in a petition for rehearing that the Court of Appeal opinion did not discuss this issue, we do not address it. (Cal. Rules of Court, rule 29(b)(2).)

after consuming alcoholic beverages. In interpreting Vehicle Code[1] section 23152, subdivision (b) (hereafter section 23152(b)) in this case, however, the majority has gone beyond the stringent prohibitions enacted by the Legislature and has on its own created the new crime of driving with alcohol in one's breath. This result is achieved only at a serious cost, for it not only tramples the long-standing rule that a court interpreting a criminal statute with two possible meanings must choose the one more favorable to the defendant, but it also invades the Legislature's exclusive power to create new crimes. Because the law does not permit us to take either action, and because in any event the defendants here were not charged with the majority's newly created crime of driving with alcohol in the breath, I conclude that the evidence at issue in this appeal was erroneously excluded.

I

In two separate and unrelated cases, the Imperial County District Attorney filed complaints against Donald Bransford and Ralph Maldonado, alleging that each defendant "did willfully and unlawfully, while having .08 percent and more, by weight, of alcohol in his blood, drive a vehicle," in violation of section 23152(b).

At the time relevant to this case, section 23152(b) provided in its first sentence: "It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her *blood* to drive a vehicle." (Italics added.) The next sentence stated that the "percent, by weight, of alcohol in a person's blood shall be based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."

The prosecution presented evidence to the jury in each case that the defendant, after arrest, was given a test to measure the amount of alcohol in his breath. As determined by experts, the amount of alcohol contained in 210,000 milliliters (210 liters) of the average person's breath is equal to the amount of alcohol contained in 100 milliliters of the person's blood. At each trial, a prosecution expert, relying on this "partition ratio" of 210,000 to 100 (or 2,100 to 1), testified that the breath test showed more than 0.08 percent, by weight, of alcohol in the blood.[2]

In each case, the defendant asked the trial court, outside the presence of the jury, for permission to cross-examine the prosecution's expert by asking

---

[1]Unless otherwise stated, all subsequent statutory references are to the Vehicle Code.

[2]In the case of defendant Bransford, the expert concluded that the breath test showed a blood-alcohol concentration of 0.09 percent, close to the legal limit of 0.08 percent. With respect to defendant Maldonado, the record does not disclose the exact results of the breath test.

questions designed to show that the partition ratio of 2,100 to 1, even if accurate for the average person, did not accurately measure the amount of alcohol in this defendant's blood. In each case, the trial court denied the request, and the jury convicted the defendant of violating section 23152 (b).[3] In addition, defendant Maldonado was found guilty of the separate offense of driving under the influence of alcohol (Veh. Code, § 23152 subd. (a)), while defendant Bransford was acquitted of that charge.

Both defendants appealed their convictions to the appellate department of the superior court, which consolidated the two cases and certified them to the Court of Appeal. (Cal. Rules of Court, rule 62(c).) The Court of Appeal upheld the convictions.

II

To determine the meaning of section 23152(b), we first examine the statute's language, read in a commonsense manner. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134]; *People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].) If the statutory language is ambiguous and susceptible to two plausible interpretations, we must, because this is a criminal statute, adopt the one more favorable to the defendant. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288] (plur. opn.).)

The rule of construction that requires us to construe ambiguities and resolve doubts as to the meaning of criminal statutes in a defendant's favor is an old and well-established one. (*Ex Parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372] ["[T]he defendant [in a criminal case] is entitled to the benefit of every reasonable doubt . . . as to the true interpretation of words or the construction of language used in a statute . . . ."]; *Harrison* v. *Vose* (1850) 50 U.S. (9 How.) 372, 378 [13 L.Ed.179, 182] ["In the construction of a penal statute, it is well settled, also, that all reasonable doubts concerning its meaning ought to operate in favor of the [defendant]."].) One early court, describing how criminal statutes "always have been and ever should be" construed, stated the rule this way: "It should be a principle of every criminal code, and certainly belongs to ours, that no person be adjudged guilty of an offence unless it be created and promulgated in terms which leave no reasonable doubt of their meaning. . . . [A] court has no option where any considerable ambiguity arises on a penal statute, but is bound

---

[3]The appellate record contains no transcript of either trial, only settled statements. These reveal little about the evidence admitted at trial; each settled statement merely shows the trial court denied the defendant's request to cross-examine the expert on the accuracy of the partition ratio.

to decide in favour of the party accused." (*The Schooner Enterprise* (C.C.D.N.Y. 1810) 8 Fed. 732, 734-735.)

This principle, referred to as the rule of lenity by the United States Supreme Court, is not an arbitrary creation of judges; it arises from two fundamental tenets of our criminal justice system. "First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear.' [Citations.] Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." (*United States* v. *Bass* (1971) 404 U.S. 336, 348 [30 L.Ed.2d 488, 496-497, 92 S.Ct. 515], fn. omitted, quoting *McBoyle* v. *United States* (1931) 283 U.S. 25, 27 [75 L.Ed. 816, 818, 51 S.Ct. 340] (per Holmes, J.); accord, *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631, 633 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

As this court observed nearly 25 years ago: "[C]ourts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. [Citation.] Penal statutes will not be made to reach beyond their plain intent; they include only those offenses coming clearly within the import of their language. [Citation.] Indeed, 'Constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of English and American criminal law.' [Citation.]" (*Keeler* v. *Superior Court*, *supra*, 2 Cal.3d at p. 632.)

These rules of construction make short work of the task of interpreting section 23152(b). The first sentence of section 23152(b) describes the conduct proscribed: "It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." In unambiguous language, the statute prohibits anyone having at least 0.08 percent of alcohol in the *blood* from driving a car. Nothing in this statutory language prohibits driving with a given quantity of alcohol in the *breath*.

At the time of defendants' arrests, the statute's second sentence provided: "For purposes of this subdivision, percent, by weight, of alcohol in a person's blood shall be based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (Stats. 1990, ch. 708, § 1,

italics added.)[4] As is true of the statute's first sentence, nothing in the second sentence expressly forbids driving with alcohol in the breath. The second sentence does not purport to make any conduct unlawful, in contrast to the first sentence, which begins "It is unlawful . . . ." On its face, the second sentence—by stating that percent of blood alcohol by weight "shall be based upon" either blood-alcohol or breath-alcohol measurements—merely sets forth two alternatives by which the prosecution may prove the crime of driving with 0.08 percent, by weight, of alcohol in one's *blood*. The prosecution can establish the defendant's blood-alcohol level either by showing the grams of alcohol per 100 milliliters of the defendant's blood or circumstantially by showing the grams of alcohol per 210 liters of the defendant's breath.

Thus, the plain language of section 23152(b) expressly prohibits only driving with alcohol in the blood, and not driving with alcohol in the breath. The majority acknowledges that it is "possible" to construe section 23152(b) as prohibiting only the act of driving with alcohol in one's blood. (Maj. opn., *ante*, at p. 890.)

The majority nonetheless relies on the second sentence of section 23152(b) to create an ambiguity in the meaning of the otherwise unambiguous phrase "alcohol in his or her blood" used in the first sentence. The majority asserts that the second sentence provides "two distinct definitions" of alcohol in a person's blood and under the second "definition" prohibits "the act of driving with 0.08 percent or more of blood alcohol *as defined by* grams of alcohol in 210 liters of breath." (Maj. opn., *ante*, at p. 890, original italics.) In doing so, the majority mischaracterizes the language of the second sentence, which nowhere purports to define the term "alcohol in [the] blood" used in the first sentence and does not state that alcohol in the blood is "defined by" alcohol in the breath.

In the majority's view, its reading of the second sentence makes the phrase "alcohol in his or her blood," as it is used in the first sentence to describe the conduct prohibited by section 23152(b), ambiguous and capable of meaning either alcohol in one's blood or alcohol in one's breath. The majority concludes from this that "the Legislature intended the statute to criminalize the act of driving either with the specified blood-alcohol level or with the specified breath-alcohol level." (Maj. opn., *ante*, at p. 890.) The majority then supports this conclusion by invoking the legislative history of section 23152(b).

---

[4]The Legislature later amended the second sentence of section 23152(b) to read: "For purposes of this *article and Section 34501.16,* percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (Stats. 1992, ch. 974, § 16, italics added.)

It is irrelevant, however, whether the majority is correct that the second sentence of section 23152(b) renders the first sentence ambiguous and makes the majority's interpretation a possible construction. Even assuming that a legitimate ambiguity exists, because the majority's construction is the harsher one, the rule of lenity forbids us from adopting it. "[W]here there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." (*United States* v. *Bass, supra*, 404 U.S. at p. 348 [30 L.Ed.2d at p. 497].) Because driving with alcohol in the blood is the only crime clearly within the language of section 23152(b), it is the only crime the Legislature created in that statute. (See *Keeler* v. *Superior Court, supra*, 2 Cal.3d at p. 632.) We have "no option" in the matter and our task of interpretation should end here. (See *The Schooner Enterprise, supra*, 8 Fed. at p. 735.)

Nevertheless, the majority, contrary to the settled rule of construction described above, adopts the construction unfavorable to defendants and holds that section 23152 creates two separate offenses—driving with alcohol in the blood, and driving with alcohol in the breath. By its suggestion that in interpreting penal statutes courts should choose the interpretation that will "increase the likelihood of convict[ion]," cause "fewer legal issues [to] arise," and make defendants "less likely to contest the charge," (maj. opn., *ante*, at pp. 891-892), the majority appears to be applying a completely unprecedented "rule of harshness" in interpreting section 23152(b).

Long ago, Chief Justice Marshall rejected in the strongest terms the proposition that a court should choose the harsher of two interpretations of a criminal statute in order to make the statute more effective at eradicating the evil it is aimed at: "The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle, that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the court, which is to define a crime, and ordain its punishment. [¶] . . . It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated." (*United States* v. *Wiltberger* (1820) 18 U.S. (5 Wheat.) 76, 95-96 [5 L.Ed. 37, 42].)[5]

---

[5]On occasion, we have construed facially ambiguous statutes adversely to criminal defendants when to do otherwise " ' " " 'would result in absurd consequences which the Legislature did not intend.' " ' " (*People* v. *Broussard, supra*, 5 Cal.4th at p. 1071; *People* v. *Pieters* (1991) 52 Cal.3d 894, 898-901 [276 Cal.Rptr. 918, 802 P.2d 420].) In this case, however, the majority does not contend that construing section 23152(b) favorably to defendants would result in "absurd consequences."

Even if the rule of lenity did not exist, in my view the majority's interpretation of the statute is an implausible rendering of what the Legislature intended here. In section 23152(b), only the first sentence purports to make any conduct unlawful, and the only conduct it makes unlawful is driving with alcohol in the blood. The second sentence does not purport to define the term "alcohol in the blood" to mean as well alcohol in the breath. Instead of using the word "define" or some equivalent term, the second sentence uses the construction "shall be based upon" to describe the relationship between alcohol in the blood and alcohol in the breath. A base is something that supports or provides the foundation for something else, as, for example, a block supports a column or evidence supports a conclusion. As used in the second sentence of section 23152(b), the phrase "shall be based upon" does not suggest a definitional relationship of equivalence or interchangeability between the two matters it connects (here, blood alcohol as percent by weight and breath alcohol), as the majority's reading proposes. To the contrary, the words "percent, by weight, of alcohol in a person's blood shall be based upon . . . grams of alcohol per 210 liters of breath" suggest that existence of a given amount of blood alcohol is a conclusion inferentially derived by some intermediate process of reasoning or deduction from the existence of alcohol in the breath. Had the second sentence been intended as a definition, it would have likely used the words "means" or "is defined as," instead of "shall be based upon."

Thus, the more plausible construction of section 23152(b) is that it creates a permissive presumption, permitting but not requiring the jury to find that a person who has 0.08 grams of alcohol per 210 liters of the breath has 0.08 percent, by weight, of alcohol in the blood. Under this construction, anyone driving with 0.08 grams of alcohol in 210 liters of the breath could thereby be presumed to also have 0.08 percent, by weight, of alcohol in the blood, and therefore to have violated section 23152(b). In turn, the defendant could attempt to rebut the inference that the presumption gives rise to, by introducing evidence of the type that was excluded here.[6] In my view, interpreting the second sentence of section 23152(b) as creating this rebuttable presumption is the most reasonable interpretation of the statutory language, as well as the one that is in accord with the rule of lenity.[7]

---

[6]As explained in *People* v. *Milham* (1984) 159 Cal.App.3d 487, 503 [205 Cal.Rptr. 688], "A permissive presumption allows—but does not require—the trier of fact to infer the ultimate fact from proof by the prosecutor of the 'basic' fact, and places no burden of any kind on defendant."

[7]In addition, the differences between the statute enacted by our Legislature and the model drunk driving statute of the Uniform Vehicle Code, which unambiguously does criminalize driving with alcohol in one's breath, also show that section 23152(b) is not a statute that criminalizes driving with alcohol in the breath. The Uniform Vehicle Code prohibits a person

## III

Even if, as the majority holds, the Legislature did make it an offense to drive with a certain percentage of alcohol in one's breath, that offense is irrelevant here because neither defendant was so charged. In each case, the complaint alleged that the defendant "did willfully and unlawfully, while having .08 percent and more, by weight, of alcohol in his *blood*, drive a vehicle." (Italics added.) In each case, the jury instructions made no mention of driving with alcohol in the defendant's *breath*. Rather, in each case the trial court instructed the jury: "Any person who drives a vehicle with 0.08 percent or more, by weight, of alcohol in his *blood*, is guilty of a misdemeanor." (Italics added.) And in each case the verdict form made reference only to the amount of alcohol in the defendant's *blood*.[8]

In short, the complaints, the jury instructions, and the verdicts all show that both defendants were charged with and convicted of driving with alcohol in their blood, and not the crime of alcohol in the breath that the majority has discovered lurking in the statute. Accordingly, the majority's

---

from driving a vehicle when "The alcohol concentration in such person's blood *or breath* is 0.08 or more . . . ." (U. Veh. Code (1992 rev.) § 11-902, subd. (a)(1), italics added.) By contrast, the prohibitory language of section 21532(b) prohibits only driving with "alcohol in [the] blood." Moreover, in discussing the measurement of alcohol in the blood and the breath, the Uniform Vehicle Code provides that "Alcohol concentration *shall mean* either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (U. Veh. Code, *supra*, § 11-903, subd. (a)(5), italics added.) By contrast, the second sentence of section 21352(b) is cast in terms of "alcohol in [the] blood," not "alcohol concentration" generally, and uses the phrase "shall be based upon," rather than the definitional phrase "shall mean."

The Wisconsin and Illinois statutes referred to by the majority (maj. opn., *ante*, at p. 892 & fn. 9) also are statutes that, like the Uniform Vehicle Code, expressly create a separate offense of driving with alcohol in the breath. (*State* v. *McManus* (1989) 152 Wis.2d 113 [447 N.W.2d 654, 657] ["(1) No person may drive or operate a motor vehicle while: [ ] [¶] (b) The person has a blood alcohol concentration of 0.1% or more by weight of alcohol in the person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath."]; *People* v. *Capporelli* (1986) 148 Ill.App.3d 1048 [103 Ill.Dec. 864, 502 N.E.2d 11, 14] [" '(a) A person shall not drive or be in actual physical control of any vehicle within this State while: (1) The alcohol concentration in such person's blood or breath is 0.10 or more . . . . [¶] . . . 5. Alcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.' "].) Unlike those states, our Legislature has not enacted a similar statute.

[8]In defendant Bransford's case, the verdict read: "We, the jury in the above-entitled cause, find the defendant DONALD EDWARD BRANSFORD GUILTY of the offense charged, to wit: COUNT 2, in violation of Sec. 23152b, of the Vehicle Code, a misdemeanor, said defendant did willfully and unlawfully, while having .08 percent or more, by weight, of alcohol in his blood, drive a vehicle." In defendant Maldonado's case, the verdict read: "We, the jury in the above-entitled cause, find the defendant RALPH MALDONADO GUILTY of the offense charged, to wit: CT II DRIVING WITH .08% OR MORE, ALCOHOL IN HIS BLOOD, IN VIOLATION OF 23152b of the VEHICLE CODE."

conclusion—that evidence of the relationship between breath alcohol and blood alcohol is irrelevant to its new crime of driving with alcohol in the breath—has no application to these defendants because they were not charged with or convicted of that crime.

## IV

In each case, the trial court erred in excluding the "partition ratio" evidence of the relationship between breath alcohol and blood alcohol that the defendants sought to introduce. Because section 23152(b) does not criminalize driving with alcohol in the breath, and because in any event both defendants were only charged with driving with alcohol in the blood, the prosecution was required to prove that each defendant had a blood-alcohol level of 0.08 percent or more, by weight. The prosecution attempted to prove circumstantially how much alcohol was in each defendant's blood by means of evidence showing how much alcohol was in his breath, and expert evidence calculating the blood-alcohol level of each defendant by applying a partition ratio of 2,100 to 1 to the breath-alcohol level of each defendant.

Each defendant sought to refute this inference of his blood-alcohol level by introducing evidence, through the prosecution's experts, of possible variations between the average partition ratio and the partition ratio of the defendants. It is undisputed that the correlation between blood-alcohol levels and breath-alcohol levels can vary in different individuals, and that the partition ratio of 2,100 to 1 is only an average value for that correlation. Here, the defendants' partition ratio evidence, by attempting to show that the partition ratio of 2,100 to 1 did not accurately establish the quantity of alcohol in each defendant's blood, was relevant to disproving the prosecution's theory as to the relationship between alcohol in the defendants' breath and alcohol in their blood. In each case, the trial court erred in excluding this evidence.

The question in each case remains whether the error was prejudicial. With regard to defendant Maldonado, the appellate record does not show the results of the test that measured the alcoholic content of his breath. Thus, it is impossible to determine the effect of the trial court's erroneous ruling. It may be that the quantity of alcohol in Maldonado's breath was so great that the expert would have testified that, even applying a partition ratio far more favorable to Maldonado, his blood-alcohol content nevertheless exceeded 0.08 percent. Because Maldonado has failed to satisfy his burden of producing an adequate record from which this court can assess whether the trial court's error was prejudicial, I would affirm his conviction of violating section 23152(b).

With respect to defendant Bransford, the prosecution's expert witness testified that the breath test showed a blood-alcohol concentration of 0.09

percent, close to the legal limit of 0.08 percent. In my view, if the trial court had permitted Bransford to cross-examine the prosecution's expert witness regarding the accuracy of the partition ratio, there is a reasonable probability that the jury would have entertained a reasonable doubt that the alcohol in his blood equaled or exceeded 0.08 percent. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)[9] I would therefore reverse defendant Bransford's conviction of violating section 23152(b).

V

CONCLUSION

"The temptation to stretch the law to fit the evil is an ancient one, and it must be resisted." (*Moskal* v. *United States* (1990) 498 U.S. 103, 132 [ 112 L.Ed.2d 449, 473, 111 S.Ct. 461] (dis. opn. of Scalia, J.).) We all share a desire to drive our cars free from the fear of injury or death at the hands of a drunk driver. A statute criminalizing driving with alcohol in the breath may well "promote[] the state's interest in reducing the danger to the public caused by those who drink and drive." (Maj. opn., *ante*, p. 891].)

As a court, however, our task is to apply the laws that the Legislature has enacted, not those it could have enacted but did not. Thus, no matter how tempting, this court cannot create a new crime of driving with a given amount of alcohol in the breath, by stretching the language of section 23152(b) "to fit the evil" of drunk driving, as the majority has done. It is up to the Legislature to make such conduct unlawful, doing so in terms that plainly and unmistakably give fair notice of the prohibited behavior. (See *United States* v. *Bass*, *supra*, 404 U.S. at pp. 348-349 [30 L.Ed.2d at pp. 496-498]; *Keeler* v. *Superior Court*, *supra*, 2 Cal.3d at pp. 632-633.) The Legislature has not yet done so. Accordingly, I would reverse the judgment of the Court of Appeal as to defendant Bransford. With respect to defendant Maldonado, he failed to show prejudice from the error in his case; therefore, I would affirm the Court of Appeal's judgment as to him.

Appellants' petition for a rehearing was denied January 19, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

[9]It is arguable that by restricting defendant Bransford's cross-examination of the expert witness, the trial court violated his federal constitutional right to confront the witnesses against him, and that the effect of the trial court's error should be measured by the "harmless beyond a reasonable doubt" standard set forth in *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Because I conclude that the error was prejudicial in any event, I do not reach this question.