[No. A083415. First Dist., Div. Two. Oct. 29, 1999.]

CARYL JESSICA KEROLLIS, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

[No. A084708. First Dist., Div. Two. Oct. 29, 1999.]

CLIFFORD F. SCHWARBERG, JR., Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

[No. A084738. First Dist., Div. Two. Oct. 29, 1999.]

SARA K. GIDDINS, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Damon M. Connolly, Judith Loach, Christine Blubaugh Mersten and Fiel D. Tigno, Deputy Attorneys General, for Defendant and Appellant.

Stephen Abbott for Plaintiffs and Respondents.

## OPINION

**LAMBDEN, J.**—In these consolidated appeals, we consider the question of whether the California State Department of Motor Vehicles (DMV) may suspend a person's driving privilege pursuant to Vehicle Code section 13353.2 for a breath-alcohol result expressed as grams of alcohol per 210 liters of breath instead of blood-alcohol concentration. (Unless otherwise indicated, all statutory references hereafter are to the Vehicle Code.) The trial court ruled in each of these cases that section 13353.2 and section 1220.4 of title 17 of the California Code of Regulations (hereafter referred to as regulation 1220.4) require the breath-alcohol concentrations to be converted into an equivalent blood-alcohol concentration. Accordingly, it granted the petitions for writ of mandate filed by Caryl Jessica Kerollis, Clifford F. Schwarberg, Jr., and Sara K. Giddins and ordered the DMV to set aside the suspension of their driving privileges. We conclude that the trial court erred and reverse the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

*Kerollis*

Caryl Jessica Kerollis was arrested for driving under the influence of alcohol in violation of section 23152 on July 21, 1997. She took a breath test, which showed .09G/210L (.09 grams of alcohol per 210 liters of breath). Based on a violation of section 23152, the arresting police officer served Kerollis with a notice of order suspending her driving privilege as mandated by section 13353.2. The officer also issued Kerollis a citation for violation of section 23152. The notice of suspension, Kerollis's confiscated driver's license, the officer's sworn report and arrest/investigation report, issued citation, and chemical test results were forwarded to the DMV as mandated by section 23158.2.[1]

The DMV held a formal administrative hearing upon Kerollis's request. Kerollis objected to the introduction into evidence of the breath test result on the ground that these results, expressed as ".09 G/210L," were not in compliance with title 17 of the California Code of Regulations. Kerollis presented expert testimony by Kenneth Mark regarding the breath test results. Mark testified that the breath test results did not comply with regulation 1220.4 because they gave only the breath-alcohol and not the blood-alcohol level. Regulation 1220.4 states at subdivision (a) that "all analytical results shall be expressed in terms of the alcohol concentration in blood, based on the number of grams of alcohol per 100 milliliters of blood." Subdivision (f) then states: "A breath alcohol concentration shall be converted to an equivalent blood alcohol concentration by a calculation based on the relationship: the amount of alcohol in 2,100 milliliters of alveolar breath is equivalent to the amount of alcohol in 1 milliliter of blood." Marks admitted on cross-examination that if the breath tests had properly been converted to a blood-alcohol concentration, the results could be the same— i.e., .09 grams of alcohol per 210 liters of breath would be equivalent to .09 grams of alcohol per 100 milliliters of blood.

The DMV hearing officer overruled Kerollis's objection to admission of the breath test results and sustained the suspension of her driving privilege. The hearing officer rejected the claim that the breath test result violated

---

[1]Section 23158.2, subdivision (a) provides in pertinent part: "If a peace officer serves a notice of suspension pursuant to Section 23137, or arrests any person for a violation of Section . . . 23152, . . . the peace officer shall immediately forward to the department [DMV] a sworn report of all information relevant to the enforcement action, including information which adequately identifies the person, a statement of the officer's grounds for belief that the person violated Section . . . 23152 . . . , a report of the results of any chemical tests which were conducted on the person . . . , a copy of any notice to appear under which the person was released from custody . . . ."

regulation 1220.4, ruling that subdivision (f) of regulation 1220.4 explains that the breath- and blood-alcohol ratios are equivalent.

Kerollis filed a petition for writ of mandamus in the superior court seeking to set aside the DMV's suspension of her license. The gravamen of the petition was that because the breath test results had not been converted into blood-alcohol concentrations, they were not in compliance with subdivision (f) of regulation 1220.4, and the DMV was therefore precluded from relying on these results to suspend Kerollis's driving privilege.

After hearing argument, the court granted the petition. Its written ruling stated in pertinent part: "Petitioner submitted evidence at the hearing establishing a violation of Title 17, section 1220.4, subdivision (a) in that the analytical result of petitioner's breath test was not expressed in terms of blood alcohol concentration. . . . Certainly, while subdivision (f) could be said to define equivalence ratios for breath alcohol concentrations and blood alcohol concentrations, nothing in the language of subdivision (f) can be said to overrule the requirement clearly stated at the outset of section 1220.4, that all analytical results 'shall be expressed in terms of [blood-alcohol concentration].' (Title 17, section 1220.4, subd. (a).) Vehicle Code, section 23152, subd., (b), which eliminates the conversion requirement in *criminal cases*, by its terms does not apply to civil administrative per se proceedings under Vehicle Code, section 13352.2 [*sic*]. (*People* v. *Bransford* (1994) 8 Cal.4th 885, 890 [35 Cal.Rptr.2d 613, 884 P.2d 70]; *People* v. *Ireland* (1995) 33 Cal.App.4th 680, 691 [39 Cal.Rptr.2d 870].)" (Italics in original.)

*Schwarberg*

Clifford F. Schwarberg, Jr., was arrested on March 11, 1998, for driving under the influence of alcohol in violation of section 23152. He took a breath test that showed .08G/210L (.08 grams of alcohol per 210 liters of breath). The arresting officer issued a misdemeanor citation for violating section 23152 and served Schwarberg with an administrative per se/suspension/revocation order of his driving privilege.

Upon Schwarberg's request, the DMV held a formal administrative hearing. Shwarberg was represented by the same counsel as Kerollis and presented virtually the same evidence and argument that were made by Kerollis. The DMV hearing officer sustained the suspension of Schwarberg's driving privilege.

Schwarberg filed a petition for writ of mandamus in the superior court seeking to set aside the DMV's suspension of his license. Schwarberg's case was argued together with Giddins's case before the same judge who heard

Kerollis's case. The same arguments were presented, and the court rendered virtually the same ruling as in Kerollis's case.

*Giddins*

Sara K. Giddins was arrested on December 13, 1998, for driving under the influence of alcohol in violation of section 23152. She took a breath test which showed .17G/210L and .18G/210L (.17 and .18 grams of alcohol per 210 liters of breath) within a half-hour of her arrest. Thereafter she was served with an administrative per se suspension/revocation order, and her driver's license was confiscated. Upon Giddins's request, a formal administrative hearing was held by the DMV. Giddins was represented by the same counsel as Schwarberg and Kerollis, and the same arguments and evidence were presented, including expert testimony by Kenneth Mark. On advice of her attorney, Giddins refused to testify. The hearing officer sustained the suspension of Giddins's driving privilege.

Giddins filed a petition for writ of mandamus in the superior court seeking to set aside the DMV's suspension of her license. Argument on her case was combined with that of Schwarberg, and she was represented by the same attorney. The gravamen of Giddins's argument was the same as that presented in the Kerollis and Schwarberg petitions. The same judge heard all three cases and rendered the same ruling in each.

## ARGUMENT

■■■ Appellant DMV contends that the trial court's ruling was erroneous. The DMV argues that a person's driving privilege may be suspended pursuant to section 13353.2 for a breath-alcohol result expressed as grams of alcohol per 210 liters of breath and that the regulations are invalid to the extent they say otherwise. Resolution of this issue raises the question of statutory interpretation.

■■■ We begin by reviewing basic principles of statutory interpretation. The fundamental goal of statutory interpretation is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. "In determining such intent, we first look to the words of the statute themselves, giving the language its usual, ordinary import. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. Where uncertainty

exists, consideration should be given to the consequences that will flow from a particular interpretation. Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*San Francisco Internat. Yachting etc. Group* v. *City and County of San Francisco* (1992) 9 Cal.App.4th 672, 680 [12 Cal.Rptr.2d 25].)

 The DMV argues that section 13353.2 must be construed in light of section 23152 since both statutes use the same language and refer generally to the same subject. Both provisions refer to driving a motor vehicle with "0.08 percent or more, by weight, of alcohol in his or her blood." Accordingly, DMV maintains, it is appropriate to refer to section 23152 in interpreting section 13353.2.

Section 13353.2 provides in pertinent part:

"(a) The department shall immediately suspend the privilege of any person to operate a motor vehicle for any one of the following reasons:

"(1) The person was driving a motor vehicle when the person had a 0.08 percent or more, by weight, of alcohol in his or her blood."

The DMV asserts that the provisions of section 13353.2 must be read in conjunction with section 23152, subdivision (b), which provides:

"It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

"For purposes of this article and Section 34501.16 [pertaining to commercial drivers], percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath.

"In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."

Section 13353.2 was added to the statutes on July 1, 1990, and originally referred to a blood-alcohol concentration of .10 percent. (Stats. 1989, ch.

1460, §§ 7, 22, pp. 6507, 6520.) In 1990, however, the Legislature amended section 13353.2 to reduce the blood-alcohol concentration from 0.10 percent to 0.08 percent. This legislation was enacted as an urgency measure and became effective on July 26, 1990. (Stats. 1990, ch. 431, §§ 4, 23, pp. 1838, 1851.) The stated purpose was to conform to the changes that had been made in 1989 to section 23152, which had reduced the blood-alcohol concentration from 0.10 percent to 0.08 percent. (Legis. Counsel's Dig., Sen. Bill No. 1150, 5 Stats. 1990 (Reg. Sess.) Summary Dig. p. 156; Stats. 1989, ch. 479, § 3, p. 1691.)

Section 23152 was amended in 1990 to add the reference to measuring alcohol in a person's blood by grams of alcohol per 210 liters of breath. (Stats. 1990, ch. 708, § 1, p. 3289.) The breath-alcohol provision was added to set forth an alternative definition of unlawful driving and to eliminate the need for conversion of a breath quantity to a blood concentration of alcohol. (*People* v. *Bransford* (1994) 8 Cal.4th 885, 891 [35 Cal.Rptr.2d 613, 884 P.2d 70].) Thus, a person who drives with 0.08 grams or more of alcohol per 210 liters of breath or with a blood-alcohol concentration of 0.08 percent of more may be arrested for and convicted of violating section 23152.

The criminal provisions of section 23152 are intertwined with the suspension of driving privilege provisions of section 13353.2. It is the violation of section 23152 that triggers the obligation of the DMV under section 13353.2 to suspend a person's driving privilege. (§§ 13557, 13558, 23158.5; Pacheco, *Admin Per Se for the Practitioner* (1993) 24 Pacific L.J. 461, 465.) The relationship between the two statutes thus dictates that they be harmonized so as to promote their common purpose of combating drunk driving.

Our colleagues in Division Three considered the relationship between section 13353.2 and 23152 in *Bell* v. *Department of Motor Vehicles* (1992) 11 Cal.App.4th 304 [13 Cal.Rptr.2d 830] (*Bell*) in determining whether the rebuttable presumption set forth in section 23152, subdivision (b) was applicable in administrative proceedings pursuant to section 13353.2. The trial court had reversed the DMV's suspension order on the ground that there was insufficient evidence of Bell's blood-alcohol concentration at the time of driving. The trial court had refused to apply the rebuttable presumption set forth in section 23152, subdivision (b), which provides in pertinent part: "In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving." The trial court

found that the phrase "in any prosecution under this subdivision" made the presumption, by its own terms, inapplicable to a DMV administrative hearing.

The Court of Appeal disagreed. It concluded that refusal to apply the presumption in administrative hearings would be contrary to the Legislature's purpose and intent and would thereby contravene the most fundamental principle of statutory construction. It has long been the rule in California, the court observed, that the literal language of enactments may be disregarded to avoid absurd results and to fulfill the intent of the Legislature. (*Bell, supra*, 11 Cal.App.4th at p. 311.) The administrative per se statutes were enacted to establish an expedited driver's license suspension system that would provide a more effective deterrent than the criminal provisions which sometimes resulted in no action being taken against the driving privileges of drivers with high chemical results as a result of plea-bargaining and pretrial diversion programs. (*Id.* at p. 312.)

The *Bell* court concluded: "Nothing in this legislative history indicates that the Legislature, in enacting the administrative per se law, intended to impose different, more onerous, proof requirements for establishing a driver's BAC [blood-alcohol concentration] in administrative hearings. On the contrary, we find that the express legislative intention to provide a swifter and more effective deterrent indicates just the opposite. Given the legislative history surrounding enactment of the presumption, the Legislature must have known that failure to apply the presumption to administrative hearings would create the same proof problem that it sought to eliminate in enacting a presumption, therefore making the administrative remedy less effective. Thus, notwithstanding the literal words of section 23152, subdivision (b), application of the presumption in administrative hearings is necessary to effectuate the Legislature's express intent in enacting the administrative per se statutes." (*Bell, supra*, 11 Cal.App.4th at p. 312, fn. omitted, italics omitted.)

The *Bell* court's reasoning is equally applicable to the present situation. When the Legislature amended subdivision (b) of section 23152 in 1990 to insert the breath-alcohol provision, it did so with the intent of speeding up the criminal process of prosecuting drunk drivers. Criminal defendants who tested on breathalyzers had lengthened their criminal trials by presenting detailed expert testimony regarding the many variables that could affect the actual ratio of an individual's breath-alcohol concentration to blood-alcohol concentration. Under the predecessor statute, courts had allowed defendants to attack breath-test results on the basis of this variability. (*People* v.

*Bransford, supra*, 8 Cal.4th at p. 889.) *Bransford* held that the amendments to section 23152, subdivision (b) eliminated the need for conversion of a breath quantity to a blood concentration of alcohol. (8 Cal.4th at p. 891.) The court noted that this interpretation of the statute was consistent with the history of its enactment as well as with the overall legislative purpose of reducing the danger to the public caused by those who drink and drive by obviating the need for the prosecution to prove actual impairment. (*Ibid.*)

Like the court in *Bell, supra*, 11 Cal.App.4th 304, we find nothing in the legislative history that indicates ". . . the Legislature, in enacting the administrative per se law, intended to impose different, more onerous, proof requirements for establishing a driver's BAC [blood-alcohol concentration] in administrative hearings. On the contrary, we find that the express legislative intention to provide a swifter and more effective deterrent indicates just the opposite." (*Id.* at p. 312.) The Legislature must have known that the failure to apply the amended definition of driving under the influence in administrative hearings would create the same proof problem that it sought to eliminate by amending the statute, thereby making the administrative remedy more onerous and less effective. Thus, we conclude that notwithstanding the literal words of section 23152, subdivision (b) ("For purposes of this article . . ."), the amended definition which permits expression of breath-alcohol results in terms of either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath applies to administrative hearings.

Our interpretation of section 23152, subdivision (b) as applying to administrative per se proceedings nullifies the argument advanced by respondents that the DMV failed to carry its burden of proof in the administrative hearings. Their argument is premised on the claim that official standards were violated in the administration of their breath tests and that the burden of proof therefore shifted to the DMV, which could no longer rely on the presumption of reliability of the chemical tests. The official standards violated in this case, according to respondents, were the failure to convert the breath-alcohol results to a blood-alcohol concentration as required by regulation 1220.4. Their claim must fail, as it is based on a regulation which conflicts with the statutes we have just interpreted. ■ When there is a conflict between a regulation and a statute or decisional law, it is well settled that the law controls the regulation. (*In re Johnny S.* (1995) 40 Cal.App.4th 969, 978 [47 Cal.Rptr.2d 94]; *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 419-420 [128 Cal.Rptr. 183, 546 P.2d 687].)

## DISPOSITION

The judgments are reversed, and the cases are remanded to the trial court with directions to deny the petitions and to reinstate the DMV's suspension orders. The DMV shall recover its costs on appeal.

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied November 24, 1999, and the petition of all respondents for review by the Supreme Court was denied February 16, 2000.