[No. D008908. Fourth Dist., Div. One. Oct. 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
AMY JO LEPINE, Defendant and Appellant.

**COUNSEL**

Grimes & Warwick, Thomas J. Warwick and Lewis A. Wenzell for Defendant and Appellant.

John W. Witt, City Attorney, Stuart H. Swett, Chief Deputy City Attorney, Marilynn J. Winters and Ward S. Clay, Deputy City Attorneys, for Plaintiff and Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Rudolf Corona, Jr., and Frederick R. Millar, Jr., Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**BENKE, J.**—The issue before us is whether in a prosecution for driving a vehicle with a blood alcohol level of 0.10 percent or greater (Veh. Code,[1] § 23152, subd. (b)), the partition or conversion ratio defined by the California Code of Regulations for converting a breath alcohol percentage to a blood alcohol percentage may only be rebutted by the defense demonstrating the defendant had a partition ratio different than that presumed by the code. We conclude the defense is not so restricted and hold general evidence may be offered concerning partition ratio variability.

I

BACKGROUND

Section 23152, subdivision (b), states in part: "It is unlawful for any person who has 0.10 percent or more, by weight, of alcohol in his or her blood to drive a vehicle. [¶]For purposes of this subdivision, percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood." Although it is the alcohol content of one's blood which defines violation of this subdivision, a driver may elect to take a breath or urine test instead of a blood test, for the purpose of determining the alcohol content of his or her blood. (§ 23157, subd. (a).) Thus when a breath or urine sample is taken, it is necessary to convert the alcohol content of that sample to its blood alcohol equivalent.

The manner by which conversion from breath alcohol to blood alcohol takes place has been addressed in Health and Safety Code section 436.52 which declares the testing of such samples taken will be done in accordance with regulations adopted by the State Department of Health. California Code of Regulations, title 17, section 1215 et seq. contains the regulations formulated by the department. Title 17, California Code of Regulations section 1220.4, subdivision (f) states: "A breath alcohol concentration shall be converted to an equivalent blood alcohol concentration by a calculation based on the relationship: the amount of alcohol in 2,100 milliliters of alveolar breath is equivalent to the amount of alcohol in 1 milliliter of blood."

Appellant Amy Jo Lepine was charged with driving with a 0.10 percent blood alcohol content. She submitted to a breath test which, based on the ratio set forth in section 1220.4, subdivision (f) of title 17 of the California Code of Regulations, determined her blood alcohol percentage was 0.13.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

Before trial defense counsel indicated his intent to challenge the 2,100-to-1 ratio used to convert a known breath alcohol percentage to its blood alcohol equivalent. Counsel stated he would do so by cross-examining the prosecution expert and by presenting the testimony of a forensic scientist.

The city attorney objected to both means of attack, arguing that before a challenge could be made to the defined ratio the defendant must demonstrate that at the time the breath sample was taken, appellant's partition ratio differed from the ratio set by the California Code of Regulations. The People argued that to allow a general attack, unrelated to a defendant's actual ratio at the time the breath sample was taken, was irrelevant, speculative and potentially confusing.

As an offer of proof, the defense presented a transcript of the testimony of their expert in another section 23152, subdivision (b) case. The expert explained the partition ratio was based on the assumption that for every 2,100 parts of alcohol in the blood, 1 part was released at the lungs. Thus, a blood alcohol reading could be made by multiplying any breath alcohol finding by 2,100 to determine blood alcohol content.

The expert stated, however, that the ratio of 2,100 to 1 is not constant and varies from individual to individual and from time to time. The expert also stated if an individual has a ratio less than 2,100 to 1, a machine calibrated to test with that ratio would give an erroneously high blood alcohol reading. He concluded the only way to determine the correct ratio for an individual at any given time is to take both a blood sample and a breath sample and test each for alcohol content.

Since variations in partition ratios are the function of whether the individual was still absorbing alcohol at the time the sample was taken, the temperature of the lungs, the speed of exhalation, the depth of exhalation, the amount of humidity in the air, the amount of mucus in the lungs and the individual's hematocrit, i.e., the ratio of blood cells to total blood volume, the expert stated there was no way, after the fact, to determine an individual's partition ratio at a given time. It would be possible, however, to conduct a series of tests at a later time to determine the individual's general partition ratio range. He stated a single test to determine an individual's partition ratio would cost $600, and a series of tests to determine a partition ratio range would cost approximately $6,000.

Based on his reading and his own studies, the expert stated the average partition ratio was 2,286 to 1 and further stated studies have indicated 68 percent of the population has partition ratios between 2,040 to 1 and 2,420

to 1, while 95 percent of the population has ratios between 1,800 to 1 and 2,660 to 1.[2]

The municipal court sustained the city attorney's objection and refused to allow cross-examination of the People's expert or introduction of defense evidence concerning general variability in the partition ratio.

On appeal the appellate department of the superior court reversed and the matter was transferred to this court pursuant to Code of Civil Procedure section 911.

## II

### DISCUSSION

In refusing to allow defense evidence concerning the general variability of partition ratios, the trial court relied upon two cases, *People* v. *Pritchard* (1984) 162 Cal.App.3d Supp. 13 [209 Cal.Rptr. 314], and *People* v. *Gineris* (1984) 162 Cal.App.3d Supp. 18 [209 Cal.Rptr. 317].[3] Although not cited by the municipal court, another opinion, *People* v. *Herst* (1987) 197 Cal.App.3d Supp. 1 [243 Cal.Rptr. 83], supports the proposition that general evidence concerning partition ratio variability is irrelevant. These cases, which arise from the Appellate Department of the Los Angeles County Superior Court, involved defense arguments that the breath test evidence offered to prove a blood alcohol percentage of 0.10 or greater was insufficient because the partition ratio used to convert a known breath alcohol percentage to a blood alcohol percentage was variable and, under the facts of those cases, allowed the possibility the blood alcohol level was less than 0.10 percent.

In *Pritchard* the appellate department observed there was evidence the intoxilyzer machine used to test the defendant's breath had an error factor of .005 percent. The court also noted evidence that while the conversion of a known breath alcohol percentage to a blood alcohol percentage was based on a presumed partition ratio of 2,100 to 1, that ratio varied in 95 percent of the population by a factor of plus or minus 10 percent. (*People* v. *Pritchard, supra,* 162 Cal.App.3d at pp. Supp. 15-16.) At trial, the defendant, who was cognizant of these observations, had argued that since the breath tests taken

---

[2] The scientific background of this legal issue is discussed in detail in several out-of-state cases. (See, e.g., *People* v. *Nieves* (1989) 143 Misc.2d 734 [541 N.Y.S.2d 1008, 1009-1010]; *State* v. *Brayman* (1988) 110 Wn.2d 183 [751 P.2d 294, 297]; *State* v. *Johnson* (Tenn.Cr.App. 1986) 717 S.W.2d 298, 299-302; *People* v. *Amores* (1989) 143 Misc.2d 527 [541 N.Y.S.2d 695, 696-697]; see also 3 Nichols, Drinking/Driving Litigation (1989) §§ 27:01-27:17.)

[3] The author and one of the concurring judges were the same in both opinions.

at the time of his arrest indicated a blood alcohol level of .11 or .12 percent and since the People's expert at trial testified there could be an error factor of 10 percent in the partition ratio used to convert a breath alcohol finding to its blood alcohol equivalent, the evidence present at trial was insufficient to prove his blood alcohol level was 0.10 percent or greater at the time he was driving.

Similarly, in *Gineris* the People's evidence was that the partition ratio used to convert breath alcohol findings to blood alcohol figures was an average ratio and that on an individual basis there could be as much as a 50 percent margin of error. Since the defendant's converted blood alcohol percentage was 0.11, the People's expert stated that given the error margin of the testing machine, the variability of individual partition ratios and the time between the driving and the test, he could not say beyond a reasonable doubt the defendant had a blood alcohol percentage of 0.10 or greater at the time the defendant was driving. (*People* v. *Gineris, supra,* 162 Cal.App.3d at p. Supp. 22; see also *People* v. *Herst, supra,* 197 Cal.App.3d at pp. Supp. 3-4.)

In arguing the evidence insufficient the defendant in *Pritchard* relied upon *People* v. *Campos* (1982) 138 Cal.App.3d Supp. 1 [188 Cal.Rptr. 366], a case dealing with former Vehicle Code section 23126, subdivision (a), driving while under the influence of intoxicating liquor. In *Campos* the court determined the blood test employed had an inherent inaccuracy of plus or minus .005 percent. It concluded that given the inherent inaccuracy of the test, it was error to instruct the jury, as the law then required (former Veh. Code, § 23126, subd. (a) (3)), that appellant was presumptively under the influence since his blood alcohol level was 0.10 percent or greater. (*People* v. *Campos, supra,* 138 Cal.App.3d at pp. Supp. 3-4.)

The court in *Campos* reasoned that given the inherent inaccuracy of the blood test and the 0.10 level of blood alcohol found by the test, it was possible appellant's true blood alcohol level was as low as .095 percent. The presumption of being under the influence when the blood alcohol level was 0.10 percent or greater was a presumption affecting the burden of proof and required the defendant to raise a reasonable doubt concerning the existence of the presumed fact. The court noted, however, that before the presumption could be applied the People were required to prove beyond a reasonable doubt the underlying fact supporting the presumption. The court concluded that when the blood test rendered a blood alcohol reading of 0.10 percent, the inherent .005 percent inaccuracy of the test rendered the finding insufficient to prove the underlying fact supporting the presumption. (*People* v. *Campos, supra,* 138 Cal.App.3d at pp. Supp. 4-8.)

In *Pritchard* the defendant urged the *Campos* rationale should be applied to the error rate inherent in the partition ratio used to convert breath

alcohol findings to their blood alcohol equivalents. He argued that if this were done, there would be insufficient evidence that he was driving with 0.10 percent or greater blood alcohol level. (*People* v. *Pritchard, supra,* 162 Cal.App.3d at p. Supp. 15.)

Responding to the defendant's argument, the court in *Pritchard* defined the issue before it as "whether, absent any evidence as to the defendant's actual partition ratio, this 10 percent error margin [i.e., the partition ratio variation] is also to be considered in determining whether the machine results establish that the defendants's blood alcohol level was 0.10 percent or more." (*People* v. *Pritchard, supra,* 162 Cal.App.3d at p. Supp. 16.)

The court noted that while the People are in possession of the testing machine and can determine its margin of error, only the defendant has access to his body and thus only he could determine whether his partition ratio varied from the 2,100-to-1 ratio defined by the Code of Regulations for breath alcohol conversion. The court, apparently concluding that only evidence of the defendant's specific partition ratio was admissible to rebut the assumed partition ratio defined by the regulation, invoked the so-called "rule of convenience," which rule has emerged from a long line of decisions imposing upon the defendant the burden of producing an exonerating fact if the existence of the fact is peculiarly within his personal knowledge and proof of the nonexistence of the facts would be relatively inconvenient or difficult for the People. *People* v. *Montalvo* (1971) 4 Cal.3d 328, 334 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518]; *People* v. *Yoshimura* (1979) 91 Cal.App.3d 609, 626-629 [154 Cal.Rptr. 314].) In adopting the rule of convenience, the court in *Pritchard* stated: "We hold that the rule of convenience applies as to the partition ratio, and by its operation the defendant is in effect presumed to have a 2,100 to 1 partition ratio unless he presents evidence as to his personal partition ratio which establishes that the 2,100 to 1 ratio is not valid for him. *General evidence of such a possibility of error in the partition ratio will not suffice to rebut this presumption.* As no such evidence was presented in the case at bench, the presumption was not rebutted; *the general evidence of a possible 10 percent margin of error in the partition ratio was without consequence for the defense.* We hold there was sufficient evidence presented to support the conviction. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)" (162 Cal.App.3d at p. Supp. 17, italics added.)

We have great difficulty with the reasoning and conclusions of the *Pritchard* opinion. An almost unstated, and certainly unsupported, premise of the opinion is that a defendant cannot present general evidence of partition ratio variability but must instead present specific evidence of his own

individual partition ratio. The *Pritchard* opinion provides neither authority nor reasoning supporting this premise.

The necessity of establishing an analytical basis for the premise, however, is critical. The issue in *Pritchard* was whether there was substantial evidence to convict the defendant in light of his argument *Campos* required he obtain the benefit of any error factor in calculating blood alcohol. The court found no substantial evidence question arose because the only relevant, admissible evidence on the issue had not been presented; this evidence being the specific partition ratio of the defendant, which the rule of convenience requires the defendant produce. Application of *Campos* was thus unnecessary.

Although the court in *Pritchard* provides no reasoning in support of its conclusion a defendant may not challenge the 2,100-to-1 ratio by general evidence of its variability, amicus curiae, the Attorney General, attempts to do so.

■■■ The Attorney General argues that when the Department of Health, in response to a directive of the Legislature to create regulations for the testing of breath samples, defined the partition ratio as 2,100 to 1, it created a presumed fact that could only be challenged by a defendant presenting evidence that his particular partition ratio was less than that defined in the regulation.

There is nothing in either the Health and Safety Code section delegating to the department the power to create standards or in the regulations produced pursuant to that delegation which evidences a legislative intent to create a presumed fact. The Attorney General cites no case so finding. Nor does he suggest a canon of statutory construction which would compel the conclusion it was the Legislature's intention to create such an unassailable scientific standard so central to the proof of a serious crime. Where the Legislature has established presumptions affecting crimes involving the use of alcohol, it has done so directly and unambiguously. (See §§ 23152, subd. (b), 23155.) We find no such directive in the Legislature's general delegation of responsibility to set standards for the performance of breath alcohol tests.

We note we are not alone in our concerns with *Pritchard* and its progeny. In *People* v. *McDonald* (1988) 206 Cal.App.3d 877 [254 Cal.Rptr. 384], the defendant was charged with driving with a blood alcohol content of 0.10 percent or more. Expert testimony was presented concerning partition ratio variability generally consistent with that presented in this case. Specifically a defense expert testified that while an individual's partition ratio could be tested, it would be speculative to say the same ratio existed at the time the

defendant was arrested and the breath test given. The expert also testified it would be costly to conduct tests to determine the variability of an individual's partition ratio. (*Id.* at pp. 879-880.)

The jury in the *McDonald* case was instructed: " 'The defendant is presumed to have a 2100 to 1 breath to blood partition ratio unless he presents evidence as to his personal ratio which raises a reasonable doubt that the 2100 to 1 ratio is not valid for him. General evidence of such a possibility of error in the partition ratio will not suffice to rebut this presumption.' " (*People* v. *McDonald, supra,* 206 Cal.App.3d at p. 880.)

The court in *McDonald* concluded it was error to give the quoted instruction. After carefully reviewing the reasoning and conclusions of *Pritchard, Gineris* and *Herst,* the court stated: "Of the three appellate department decisions, only *Herst* addresses the questions raised here, the propriety of the instructions given. The language of the instruction, however, appears to come directly from *Pritchard*. (*People* v. *Pritchard, supra,* 162 Cal.App.3d at Supp. p. 17.) But in none of the three cases was there admissible evidence that a person's partition ratio is not constant and may vary over time. Similar evidence was disallowed in *Herst,* but apparently no objection was made to the evidence presented by the defense expert here. Indeed, [the defense expert] disputed the notion that a defendant could measure his or her partition ratio because it would only be speculative that the ratio had been the same at the time of the prosecution's breath test. Although the prosecution's expert claimed one's partition ratio was constant, he contradicted himself by admitting the ratio could be affected by external factors which vary over time. The significance of [the defense expert's] testimony cannot be ignored because it directly contradicts facts *Pritchard, Gineris* and *Herst* presumed: that one's partition ratio is constant and can be measured by the defendant. The rule of convenience should not apply unless the 'exonerating fact is peculiarly within the defendant's knowledge . . . .' (*People* v. *Pritchard, supra,* 162 Cal.App.3d at Supp. p. 16; see also *People* v. *Montalvo* (1971) 4 Cal.3d 328, 334 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518].) As in *Montalvo,* the defense here does not 'have any substantially greater ability to establish [the exonerating fact] than does the prosecution.' (*People* v. *Montalvo, supra,* 4 Cal.3d at pp. 334-335.)" (*People* v. *McDonald, supra,* 206 Cal.App.3d at p. 883.) While *McDonald* does not directly address the question of the admissibility of general evidence of partition ratio variability, it strongly suggests such evidence is admissible.

We also note the breath alcohol partition ratio problem is not unique to California. Courts of other states have addressed the issue, usually in the context of a defendant's claim that breath test evidence is inadmissible given the variability of the conversion ratio used to convert breath alcohol

findings to blood alcohol levels. These courts have uniformly accepted the fact of partition ratio variability and have almost uniformly concluded the fact of variability goes to the weight to be given breath test evidence rather than its admissibility. (See *People* v. *Nieves, supra,* 541 N.Y.S.2d at pp. 1009-1011; *Fultz* v. *State* (Tex.App. 1989) 770 S.W.2d 595, 596-598; *People* v. *Brown* (1989) 143 Misc.2d 270 [540 N.Y.S.2d 650, 650-653]; *State* v. *McCarty* (S.D. 1988) 434 N.W.2d 67, 68-69; *State* v. *Brockway* (1981) 2 Ohio App.3d 227 [441 N.E.2d 602, 603-608]; *State* v. *Johnson, supra,* 717 S.W.2d at pp. 299-305; *People* v. *Singh* (City Crim.Ct. 1989) 542 N.Y.S.2d 1018, 1023-1024; *People* v. *Amores, supra,* 541 N.Y.S.2d at pp. 696-697; *State* v. *Gates* (Hawaii App. 1989) 777 P.2d 717, 720-721; *State* v. *Robitaille* (Vt. 1989) 561 A.2d 412, 414.[4]

Respondent in his case argues, as he did below, that all other considerations aside, to allow general evidence of partition ratio variability is to present mere speculation that can only confuse the jury and prejudice the People. What the People seek, however, is not escape from an unfair disadvantage, but the perpetuation of an unfair advantage. While we will not, and cannot, arbitrate scientific disputes, it seems clear from the evidence submitted in this case and from a host of opinions in this and other states, that the partition ratio may vary from time to time and from individual to individual. This being the case it is appropriate a jury be allowed to consider that fact. We trust in the general rules of evidence, the preparation of counsel and the good judgment of trial judges to insure that this question of partition ratio variability is presented to jurors in a proper, complete and understandable form.[5]

---

[4] In at least two instances courts have taken different approaches. In *State* v. *Hvistendahl* (1987) 225 Neb. 315 [405 N.W.2d 273, 275-276], and *State* v. *Burling* (1987) 224 Neb. 725 [400 N.W.2d 872, 875-877], the Supreme Court of Nebraska held the partition ratio had to be adjusted to give the defendant the benefit of the possible variation in the ratio.

In *State* v. *McGinley* (1988) 229 N.J.Super. 191 [550 A.2d 1305, 1312-1313], the superior court of New Jersey decided that based on the variability of the partition ratio, a complete rejection of breath tests or substantial adjustments in their findings was required. However, in *State* v. *Downie* (1988) 229 N.J. Super. 207 [550 A.2d 1313], the appellate department of the New Jersey superior court, while recognizing that the issue of partition ratio variability was an important one, not only rejected the conclusions of *McGinley,* but held that based on the New Jersey Supreme Court's holding that the breathalyzer device is a reliable and accurate tool for determing concentration of blood alcohol (*Romano* v. *Kimmelman* (1984) 96 N.J. 66 [474 A.2d 1]) the defense was foreclosed from presenting evidence concerning partition ratio variability. (*State* v. *Downie, supra,* 550 A.2d at pp. 1314-1316.) (The court suggested their Supreme Court review the matter immediately.) (*Ibid.*)

[5] While in most states it is a crime to drive with a specific blood alcohol level, an increasing number of states have adopted the definition of alcohol concentration found in section 11-902, subdivision (a)(1) of the Uniform Vehicle Code which states: "(a) A person shall not drive or be in actual physical control of any vehicle while: [¶] 1. The alcohol concentration in his blood *or breath* is 0.08 or more based on the definition of blood and breath units in

We pause momentarily to note this case has been presented as one whose central issue is whether the rule of convenience applies to the presentation of evidence of an individual defendant's partition ratio. As our analysis reflects, however, the rule of convenience is important in this context only if we accept the flawed premise that general evidence of partition ratio variability is inadmissible. ■ Because of the manner in which the issue was raised, however, we will briefly discuss the rule of convenience and its application to the presentation of individual partition ratio evidence. We conclude, as did the appellate department of the superior court, that the rule is inappropriately applied in the context of this case. As we have previously noted, the initial burden of producing evidence may be placed on an accused when he has ready access to that proof and the burden of producing the evidence will not be unduly harsh or unfair. (*People* v. *Montalvo, supra,* 4 Cal.3d at p. 334.) This rule of convenience traditionally arises in cases where the existence of a license, permit or authorization is an exonerating factor, the existence of which would be relatively inconvenient or difficult for the prosecutor to prove. (*People* v. *Leever* (1985) 173 Cal.App.3d 853, 874 [219 Cal.Rptr. 581].) The situation is far different where, as here, the evidence is costly to acquire and may be subject to variability.

■ We conclude, therefore, the trial court erred in excluding the defense from cross-examining the People's expert concerning partition ratio variability and from presenting evidence concerning such variability. In light of our findings, it is unnecesary for us to consider appellant's additional constitutional arguments.[6]

Judgment reversed.

Todd, Acting P. J., and Nares, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 21, 1990.

---

§ 11.902.1(a)(5)." (Italics added.) (See *People* v. *Burns* (Apr. 5, 1989) Crim. Ct. of N.Y., Kings County (White, J.) [nonpub. opn.].)

[6] After oral argument we were informed by amicus curiae, the Attorney General, that the Appellate Department of the Los Angeles County Superior Court has abandoned the rule of convenience adopted in *Pritchard.* (See *People* v. *Thompson, post,* p. Supp. 7 [265 Cal.Rptr. 105].) The Attorney General asks us to reject the reasoning of *Thompson* and retain the rule that general evidence of partition ratio variability is inadmissible. For the reasons stated above we decline to do so.