[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 584 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 585 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 586 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 587 
OPINION
 I. FACTUAL AND PROCEDURAL HISTORY Defendant Timmie Lance McNeal was charged with driving under the influence of alcohol (Veh. Code, § 23152, subd. (a) (section 23152(a)))[1] and driving with a blood-alcohol level of 0.08 percent or greater (§ 23152, subd. (b) (section 23152(b))).[2] The jury convicted defendant of driving under *Page 588 the influence under section 23152(a); it was unable to reach a verdict on the section 23152(b) charge of driving with a blood-alcohol level of 0.08 percent or greater. (We will refer at times to a charge under § 23152(a) as "generic DUI," and to a charge under § 23152(b) as "per se DUI.")
 At trial, evidence of defendant's blood-alcohol level was admitted in the form of breath test results. The tests were administered by the City of Redlands police. Defendant's first expiration did not register. The second and fourth expirations registered as insufficient. The third and fifth samples each registered a blood-alcohol concentration of 0.10 percent. The blood-alcohol concentration was determined based upon a mathematical constant for converting the amount of alcohol actually found in the defendant's breath to an amount of alcohol that would presumably be found in his blood. This constant is known as the "standard partition ratio."
 After the defense rested, defendant moved to reopen relative to count 1, the generic DUI charge, to present an expert witness to "discuss the partition ratios." (It is not clear from the record whether defendant sought to offer evidence of defendant's personal partition ratio or evidence of the general variability of partition ratios.) After considering People v. Bransford (1994) 8 Cal.4th 885 [35 Cal.Rptr.2d 613,884 P.2d 70] (Bransford), wherein the California Supreme Court held that partition ratio evidence was inadmissible relative to a charge of per se DUI, the trial court denied defendant's motion; the court indicated that partition ratio evidence was not relevant to an alleged violation of the generic DUI statute for the same reasons that partition ratio evidence was not relevant to a per se DUI charge.
 Defendant appealed to the Appellate Division of the San Bernardino County Superior Court. He claimed the trial court committed reversible error in excluding partition ratio evidence. In affirming, the appellate division found that partition ratio evidence was admissible on a charge of generic DUI, but that the trial court's error in not admitting the evidence was harmless.
 On our own motion, we ordered the case transferred to this court to secure uniformity of decision and to settle an important question of law. (See former Cal. Rules of Court, rules 62 64(a); see also Code Civ. Proc., § 911.)[3] *Page 589 
 II. ANALYSIS
A. Standard of Review
 "We review for abuse of discretion a trial court's ruling on a motion to reopen a criminal case to permit the introduction of additional evidence." (People v. Marshall (1996) 13 Cal.4th 799, 836 [55 Cal.Rptr.2d 347, 919 P.2d 1280].) "`Factors to be considered in reviewing the exercise of [the trial court's] discretion include the stage the proceedings had reached when the motion was made, the diligence shown by the moving party in discovering the new evidence, the prospect that the jury would accord it undue emphasis, and the significance of theevidence.' [Citation.]" (People v. Rodriguez (1984) 152 Cal.App.3d 289,295 [199 Cal.Rptr. 433].) Here, the trial court denied defendant's request to reopen based upon its determination that the proffered evidence regarding partition ratios was inadmissible under Bransford. We review a trial court's evidentiary rulings for an abuse of discretion. (People v. Jablonski (2006) 37 Cal.4th 774, 805 [38 Cal.Rptr.3d 98,126 P.3d 938].)
B. Analysis
 Under the generic DUI statute, it is "unlawful for any person who is under the influence of any alcoholic beverage . . . to drive a vehicle." (§ 23152(a).) To prove this charge here (as well as the charge for per se DUI), the prosecution introduced evidence of alcohol in defendant's breath. The relationship between such evidence and intoxication has been explained as follows: "Alcohol contained only in the breath does not cause intoxication. It is the impact of alcohol on the central nervous system, particularly on the brain, that causes the physical and psychological changes associated with impairment. Alcohol reaches the central nervous system through the blood. When used to establish blood alcohol levels, breath testing devices use a mathematical constant to approximate the percentage of alcohol in the blood based on the amount of alcohol present in a breath sample." (State v. Brayman (1988)110 Wn.2d 183, 187-188 [751 P.2d 294] (Brayman); see also State v. Hanks
(2001) 172 Vt. 93, 94-95 [772 A.2d 1087] (Hanks).) In California, this mathematical constant is set forth in (among other places) section 23610. (See also § 23152(b); Cal. Code Regs., tit. 17, § 1220.4, subd. (f).)
 Section 23610 provides that, in a prosecution for generic DUI, the amount of alcohol in the person's blood, as shown by blood, breath, or urine, shall give rise to various presumptions as to whether the defendant was under the influence of alcohol at the time of driving. In particular, the statute provides that a person "shall be presumed" to be "under the influence of an alcoholic beverage" when "the amount of alcohol in the person's blood at the time of the test as shown by chemical analysis of that person's blood, breath, or *Page 590 urine" is 0.08 percent or more, by weight, of alcohol in the person's blood. (§ 23610, subd. (a).) "Percent, by weight, of alcohol in the person's blood" is defined as "grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." (§ 23610, subd. (b).) This definition creates a presumptive blood-breath partition ratio of 1 to 2,100; that is, the same amount of alcohol found in 2,100 milliliters of a person's breath would presumably be found in a milliliter of the person's blood.
 However, actual partition "ratios vary both between individuals, and at different times in the same individual. . . ." "Factors influencing an individual's blood-breath ratio include body temperature, hematocrit level (the ratio between red blood cells and blood plasma), and the time at which alcohol was consumed in relation to the time breath alcohol is measured. Higher than normal body temperatures resulting from fevers, exercise, and menstrual cycle variations in women result in a lower blood-breath ratio than normal. If all other factors are the same in a given individual, a breath test based on that individual's normal blood-breath ratio, given when body temperature is elevated, will overestimate that individual's actual blood alcohol level." (Brayman,supra, 751 P.2d at p. 297; see also Bransford, supra, 8 Cal.4th at p. 889;People v. Lepine (1989) 215 Cal.App.3d 91, 94 [263 Cal.Rptr. 543](Lepine); Hanks, supra, 772 A.2d at p. 1089.)
 Because of the uncertainty of breath-alcohol content as an indicator of blood-alcohol content, defendant contends he should be allowed to introduce evidence concerning partition ratios. The People submit that the Legislature has determined the appropriateness of calculating the blood-alcohol content based upon a breath test, and that defendant should not be allowed to challenge that calculation. In agreeing with the People, the trial court relied upon Bransford. We begin there.
 In Bransford, the California Supreme Court granted review to determine whether the defendants, convicted of driving with 0.08 percent or more of alcohol in their blood, should be allowed to challenge "their breath-test results by showing that their personal ratio of breath-alcohol concentration to blood-alcohol concentration (the `partition ratio') differed from the standard partition ratio that breath-testing machines use to convert breath-alcohol readings into blood-alcohol equivalents." (Bransford, supra, 8 Cal.4th at p. 888.) The court held that defendants could not place before the jury evidence of their individual partition ratios.[4] The court focused on the 1990 *Page 591 amendment to section 23152, which changed the per se DUI statute from, "`[f]or purposes of this subdivision percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood,'" to "`[f]or purposes of this subdivision, percent, by weight, of alcohol in a person'sblood shall be based upon grams of alcohol per 100 milliliters of bloodor grams of alcohol per 210 liters of breath."" (Bransford, supra, at pp. 88-889, fn. 3; id. at p. 890, quoting Stats. 1990, ch. 708, § 1, pp. 3289-3290.) The court explained, "we believe there is . . . only one reasonable manner in which to [read the statute], i.e., the Legislature intended the statute to criminalize the act of driving either with the specified blood-alcohol level or with the specified breath-alcohol level. The second paragraph provided two distinct definitions" for arriving at whether an individual is driving with 0.08 percent or more of blood alcohol. (Bransford, supra, at p. 890, italics added.)
 In response to the defendants' argument that the statute as amended created an irrebuttable conclusive presumption that the amount of alcohol in 210 liters of breath was equivalent to the amount of alcohol in 100 milliliters of blood, the court stated that the statute "`does not create a conclusive presumption of intoxication. . . . Instead, the statute defines, in precise terms, the conduct proscribed.' [Citation.]" (Bransford, supra, 8 Cal.4th at p. 892.) The conduct prohibited is either (1) driving with a 0.08 percent blood-alcohol level based on grams of alcohol per 100 milliliters of blood, or (2) driving with a blood-alcohol level of 0.08 percent based on grams of alcohol per 210 liters of breath. Thus, while variances may exist because of the method used for measurement, there is no need to convert a breath-alcohol measurement to a blood-alcohol level. Both measurements are distinct substantive statutory means by which the per se DUI statute can be violated. (SeePeople v. Pinkston (2003) 112 Cal.App.4th 387, 393 [5 Cal.Rptr.3d 274].) Thus, under Bransford, when the alleged per se DUI is based upon the defendant's *Page 592 breath-alcohol level, evidence of variations in the partition ratio is irrelevant. (See People v. Acevedo (2001) 93 Cal.App.4th 757, 765-766
[113 Cal.Rptr.2d 437].)
 Lack of admissibility relative to a per se DUI charge does not, however, resolve the question of whether evidence of partition ratio is admissible on a charge of generic DUI. Indeed, the Bransford court expressly stated that it was not addressing this issue. (Bransford,supra, 8 Cal.4th at p. 893, fn. 10.) For per se DUI, as Bransford makes clear, we are concerned with whether the defendant was driving with a 0.08 percent blood-alcohol level or above, as defined by that subdivision, regardless of whether the defendant was in fact intoxicated. However, under the generic DUI statute, we are ultimately concerned with the defendant's actual state of intoxication (or, more precisely, with whether the defendant was "under the influence" of alcohol or drugs while driving).
 Because Bransford does not directly resolve the question presented in this case, we turn next to evaluating the relevancy of partition ratio evidence in a generic DUI case. Generally, relevant evidence is admissible. (Evid. Code, § 351.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Id., § 210.) There are two disputed facts in this case to which partition ratio evidence might be relevant: (1) the basic or preliminary fact giving rise to the presumption of being under the influence under section 23610, namely, that defendant had a 0.08 percent blood-alcohol level, as defined by that section, at the time of the offense; and (2) the ultimate fact that defendant was driving under the influence within the meaning of the generic DUI statute. As we explain more fully below, because the Legislature has defined the basic fact — a certain blood-alcohol concentration — to include breath-alcohol concentration at the standard partition ratio, evidence of a different ratio is irrelevant. However, relative to the ultimate fact of intoxication, evidence of a defendant's personal partition ratio, but not evidence of the general variability in partition ratios, is relevant and admissible.
C. Admissibility to Prove or Negate the Basic Fact Underlying the Presumption
 As a preliminary matter, before addressing the relevance of partition ration evidence to challenge the basic fact underlying the presumption of being under the influence, we consider whether the statutory breath-alcohol presumption is consistent with due process.
 "Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence *Page 593 of an element of the crime — that is, an `ultimate' or `elemental' fact — from the existence of one or more `evidentiary' or `basic' facts. [Citations.] The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. . . . [¶] The most common evidentiary device is the entirely permissive inference or presumption, which allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. [Citation.] In that situation the basic fact may constitute prima facie evidence of the elemental fact. . . . Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the `beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (Ulster County Court v. Allen (1979) 442 U.S. 140, 156-157 [60 L.Ed.2d 777, 99 S.Ct. 2213], citation omitted.)
 As set forth above, section 23610 provides for a presumption in generic DUI cases by which a person "shall be presumed" to be "under the influence of an alcoholic beverage" when "the amount of alcohol in the person's blood at the time of the test as shown by chemical analysis of that person's blood, breath, or urine" is 0.08 percent or more, by weight, of alcohol in the person's blood. (§ 23610, subd. (a)(3).) Although section 23610 provides that the presumptions affect "the burden of proof and employs the mandatory phrase, "shall be presumed" (§ 23610, subd. (a)(3)), in order to save the statute from creating an unconstitutional mandatory presumption, it has been interpreted as creating merely a permissive inference that the trier of fact is free to credit or reject. (See People v. Milham (1984) 159 Cal.App.3d 487,501-505 [205 Cal.Rptr. 688].) Accordingly, CALJIC No. 12.61 provides: "If the evidence establishes beyond a reasonable doubt that at the time of the chemical analysis of the defendant's blood, breath or urine, there was 0.08 percent or more by weight of alcohol in the defendant's blood,you may, but are not required to, infer that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense." (Italics added.) (See also Judicial Council of Cal. Crim. Jury Instns. (2006-2007) CALCRIM No. 2110 ["you may, but are not required to, conclude that the defendant was under the influence"].)[5] *Page 594 
 The basic or preliminary fact that gives rise to the presumption of intoxication in section 23610 is a certain percent of alcohol by weight in the person's blood as defined in that section. In People v. Lachman
(1972) 23 Cal.App.3d 1094 [100 Cal.Rptr. 710], the court considered whether the presumption, set forth in a predecessor statute, that a person is under the influence when the person has a 0.10 percent blood-alcohol content violated due process. The court held it did not, and explained: "The presumption . . . is not based on speculation but is founded on the long-recognized and scientifically established relationship between blood alcohol level and degree of intoxication. . . . It can be said with substantial assurance that a person with 0.10 per cent [sic] or more alcohol in his blood is more likely than not under the influence of intoxicating liquor. There thus exists sufficient rational connection in experience between the preliminary fact proved and the ultimate fact presumed to satisfy the requirement of due process of law." (Id. at p. 1098.)
 If, in the present case, defendant's blood-alcohol reading had been based on a blood extraction, there would clearly be a rational connection between the blood-alcohol reading and whether defendant was under the influence of alcohol. And, because of the long-recognized and scientifically established relationship between blood-alcohol concentration and intoxication, there would be no meritorious basis for attacking the underlying efficacy of the correlation. Here, however, the presumption is not based solely upon the relationship between blood-alcohol content and intoxication, but also upon a statutorily prescribed mathematical constant for converting breath alcohol content into blood-alcohol content. The statute addressed by Lachman did not include this formula for converting breath-alcohol levels to blood-alcohol levels.
 The nature and extent of the relationship between breath alcohol and blood alcohol (and intoxication) has been a subject of scientific debate for decades. (See, e.g., People v. Ireland (1995) 33 Cal.App.4th 680,693 [39 Cal.Rptr.2d 870] (Ireland); State v. Downie (1990) 117 N.J. 450,457 [569 A.2d 242]; State v. Brigham (Fla.Dist.Ct.App. 1997) 694 So.2d 793,795; Schop, Is DWI DOA?: Admissibility of Breath Testing Evidence in theWake of Recent Challenges to Breath Testing Devices (1991) 20 Sw.U. L.Rev. 247, 251-252 (hereafter Schop).) The breath test "is based on the premise that at any given temperature, the ratio between the concentration of alcohol in the blood and that in the air from the lungs is constant. Verification of this fact and the numerical magnitude of this ratio was done experimentally. [Citation.] As blood containing alcohol passes through the lungs, a fractional amount tends to diffuse through the pulmonary membranes and enter the lungs, where it is exhaled. A fluid dissolved in a liquid will, over time, partially diffuse into an adjacent gas in a distribution predictable for that fluid. A general law of *Page 595 physics, Henry's law, [6] describes the rate of diffusion. This predictable relationship is what allows a measurement of a person'sbreath to be extrapolated to show the concentration of alcohol in theblood." (Dahl v. State (Tex.App. 1986) 707 S.W.2d 694, 696.) According to one court, "many experts consider alveolar air, or air expelled from the lungs at the end of a deep breath, as the best practical measure of alcohol in the brain during the absorptive phase" of metabolizing alcohol. (State v. Downie, supra, 569 A.2d p. 246.) Although the 1 to 2,100 standard partition ratio has been criticized, it is nevertheless widely accepted. (See State v. Brigham, supra, at p. 795; Schop, supra, at p. 257.)
 A report prepared for the Assembly Committee on Public Safety regarding the bill to redefine blood alcohol for purposes of the per se DUI to include breath alcohol at the standard partition ratio addressed the issue: "Should the offense of driving under the influence of alcohol be statutorily defined in terms of the concentration of alcohol found in the breath when breath analysis is used?" (Hearing notes of Assem. Com. on Public Safety (May 15, 1990) Assem. Bill No. 4318 (1989-1990 Reg. Sess.), capitalization omitted.) The report included the following comment: "Scientific Recommendation. According to M. F. Mason, Ph.D., Professor of Forensic Medicine and Toxicology and K. M. Dubrowski, Ph.D., Professor of Medicine and Director of Toxicology Laboratories, `the conversion of a breath quantity to a blood concentration of ethanol, for forensic purposes, should be abandoned and the offense of driving while under the influence of alcohol should be statutorily defined in terms of the concentration of ethanol found in the breath in jurisdictions employing breath analysis.['] (`Breath-Alcohol Analysis: Uses, Methods, and Some Forensic Problems — Review and Opinion', 21 Journal of Frensic [sic] Sciences, No. 1, p. 33 (1976)." (Ibid.)[7]
 In Ireland, the defendant, convicted of per se DUI, challenged on due process grounds the exclusion of evidence of the variability between blood-alcohol and breath-alcohol measurements. He asserted numerous physiological "reasons why breath tests are inaccurate predictors of true alcohol content." (Ireland, supra, 33 Cal.App.4th at p. 692.) TheIreland court rejected the argument, explaining: When the Legislature enacted the amendment defining blood alcohol to include breath alcohol using the standard partition ratio for purposes of the per se DUI statute, "it was aware of the `complexities' of converting breath-alcohol values to blood-alcohol values. Indeed, it was precisely because of those complexities that the Legislature *Page 596 decided to eliminate the conversion requirement, accepting as sufficient for defining legislative policy a prohibition on driving based on the presence in a person's breath of a certain amount of alcohol, [¶] . . . [¶] The fact that the current state of scientific knowledge has not settled the ongoing scientific debate as to the best method of measuring inebriation does not preclude the Legislature from regulating driving based on conflicting scientific theories." (Id. at p. 693; see alsoBrayman, supra, 751 P.2d at p. 301 ["While the record may establish that breath is a less direct measure of blood alcohol levels, it does not establish a lack of a reasonable and substantial relationship between breath alcohol and impairment"].) Although the Ireland court addressed the legislative changes to the per se DUI statute, its rationale applies equally to the presumption of being under the influence in generic DUI cases. We therefore conclude that the presumption of driving under the influence provided by section 23610 for purposes of a generic DUI charge does not violate due process.
 Next, we consider whether evidence of a defendant's personal partition ratio is relevant to prove or disprove the basic fact of the presumption. The Ireland court's consideration of legislative history provides guidance. As discussed in that case, the addition of "grams of alcohol per 210 [liters] of breath," as an alternative method of measuring blood alcohol, was added to former section 23155 (the predecessor to § 23610) in 1989 through Senate Bill No. 1119 (1989-1990 Reg. Sess.). (Ireland, supra, 33 Cal.App.4th at p. 691, citing Stats. 1989, ch. 1114, § 34, pp. 4085-1086.) The same language was added to the per se DUI statute in 1990 through Assembly Bill No. 4318 (1989-1990 Reg. Sess.). (Stats. 1990, ch. 708, § 1, pp. 3289-3290; see Bransford, supra,8 Cal.4th at pp. 889-891.)[8] As the Ireland court stated: "The Assembly Committee on Public Safety, the Senate Rules Committee, and the Senate Committee on Judiciary all decried that the challenges to the accuracy of the partition ratio had resulted in `expensive and time consuming evidentiary hearings and undermine [d] successful enforcement of driving under the influence laws.' (Hearing notes of Assem. Com. on Pub. Saf. (May 15, 1990) Assem. Bill No. 4318.) [¶] In 1990, Assembly Bill No. 4318 . . . was introduced to `[e]liminate the need for conversion of a breath quantity to a blood concentration of alcohol by statutorily defining driving under the influence of alcohol in terms of the concentration of alcohol found in the breath when breath analysis is used.' (Assem. Com. on Public Safety, May 15, 1990 hearing.) The committee explained that `[t]he complexities of the existing conversion or partition ratio result in a significant number of cases being challenged on the accuracy and applicability of the partition ratio.' (Hearing notes of Assem. Com. on Pub. Saf., supra, [Assem. Bill No.] *Page 597 4318[.])" (Ireland, supra, at pp. 689-690.) The Assembly Committee on Public Safety further stated: "`Last year the Legislature approved and the Governor signed Senate Bill [No.] 1119 (Seymour) which, effective January 1992, eliminates the DUI partition ratio [in generic DUI cases], an unnecessarily complicated method of converting units of alcohol per liter of breath into the current standard of .08% blood alcohol per milliliter of blood. [Assembly Bill No.] 4318 simply speeds up the effective date to January 1, 1991, in an effort to provide relief to our beleaguered DUI trial process.'" (Id. at p. 691.)
 In light of this history, it is evident that the Legislature intended to eliminate partition ratio evidence as to both the crime of driving with a blood-alcohol level of 0.08 percent or greater under the per se DUI statute, and the presumption of driving under the influence under the generic DUI statute. The Legislature intended to put breath-alcohol test results on equal footing with blood-alcohol tests. With respect to the presumption applicable to generic DUI prosecutions, the Legislature accomplished this by, in effect, redefining the basic fact that must be proved to trigger the presumption. Prior to these amendments, the basic fact was a certain blood-alcohol level. A person charged with generic DUI, based only on a breath test, could introduce partition ratio evidence to challenge that basic blood-alcohol fact; evidence of variances in personal partition ratios were relevant in determining whether the defendant had the blood-alcohol level necessary to trigger the presumption. (See Bransford, supra, 8 Cal.4th at p. 889.) Following the amendments, the specified breath-alcohol level itself is a basic fact that triggers the presumption of intoxication. If the prosecution can prove the defendant had the specified breath alcohol level, it no longer needs to prove any particular blood-alcohol level to be entitled to the presumption of intoxication. In this situation, partition ratio evidence is simply irrelevant to the issue of whether the basic fact exists. (Cf.Ireland, supra, 33 Cal.App.4th at p. 691.)
D. Admissibility to Prove or Negate the Ultimate Fact of Being Under the Influence
 We still must examine whether partition ratio evidence is admissible for purposes of creating a reasonable doubt as to the presumed or ultimate fact of intoxication. As discussed above, the presumption created by section 23610 permits jurors to infer, but does not require that they find, the ultimate fact from the existence of a certain blood-alcohol or breath-alcohol concentration. (People v. Milham, supra,159 Cal.App.3d at pp. 501-505; CALJIC No. 12.61.) Nothing in the statute precludes the ability of the defendant from introducing other evidence relevant to the ultimate fact of intoxication. Indeed, when the Legislature redefined blood-alcohol content to include breath alcohol, it left intact the following language now codified in subdivision (c) *Page 598 of section 23610: "This section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether the person ingested any alcoholic beverage or was under the influence of an alcoholic beverage at the time of the alleged offense."[9]
 Because intoxication occurs when alcohol in sufficient amounts is carried to the central nervous system through the bloodstream, evidence of alcohol in a person's bloodstream is relevant to proving that a defendant was under the influence of alcohol. When the evidence of blood-alcohol is based on a breath test, the accuracy of the breath-alcohol measurement as an indicator of the amount of alcohol in the defendant's bloodstream is important. Such accuracy depends in part on the extent to which the defendant's actual partition ratio varies from the statutory partition ratio. Evidence of a defendant's personal partition ratio may show that the breath test overstates or understates the amount of alcohol in his bloodstream, thereby reducing or increasing the likelihood that he was intoxicated. Such evidence thus bears upon the question of whether the defendant was under the influence of alcohol, and is therefore relevant. (Veh. Code, § 23610, subd. (c); Evid. Code, § 210.)
 While there is no published California case on point, two out-of-state decisions are instructive. In Hanks, supra, 772 A.2d 1087, the defendant was charged with driving under the influence of an intoxicating liquor, a violation of Vermont Statutes Annotated, title 23, section 1201, subdivision (a)(2). (Hanks, supra, at p. 1088.) (Prosecutions under this subdivision are described in Hanks as "generic DWI" cases.) He was not charged with the crime of driving with an alcohol concentration of 0.08 percent or more, or "per se" DWI, a violation of subdivision (a)(1) of the same statute. The defendant's breath sample registered 0.109 percent alcohol content. At the time of the offense, Vermont law provided that "(`If the person's alcohol concentration at [the time of operation] was 0.08 [percent] or more, it shall be a permissive inference that the person was under the influence of intoxicating liquor in violation of section 1201 [, subdivision] (a)(2). . . .')" (Hanks, supra, at p. 1088.) By way of a motion in limine the prosecution sought an order limiting defense counsel's cross-examination of the state's toxicologist "`to exclude any examination based on variations as a general matter in the human population in the so-called "partition ratio."'" (Ibid.) The state's motion was based on the fact that under Vermont law, alcohol concentration can be measured by either the number of grams of alcohol per 100 milliliters of blood or the number of grams of alcohol per 210 liters of breath. (Id. at p. 1089.) The state contended that given the legislatively adopted partition ratio, any evidence on partition ratio variation would be irrelevant, confusing, and "misleading because it would subvert the legislative statement of what the law is on this subject." (Id. at p. 1090.) At a hearing on the state's motion, the state's expert, "confirmed . . . that `[b]ecause blood-breath ratios vary *Page 599 both between individuals, and at different times in the same individual, a breath test based on a 2[,] 100:1 blood-breath ratio may not accurately represent a particular individual's blood alcohol level.' [Citation.] The state chemist agreed that partition ratios can vary from 1[,]600:1 to 3[,]000:1. . . ." (Id. at p. 1089.) The trial court adopted the analysis in Bransford and granted the state's motion, precluding partition ratio evidence.
 On appeal, the defendant argued that while partition ratio evidence may not be admissible in cases involving per se violations, they are relevant in cases involving generic DWI violations. The Vermont Supreme Court agreed. After characterizing the generic DWI statute as creating a permissive inference as opposed to a rebuttable presumption, the court stated, "We are not persuaded by the State's arguments that allowing defense counsel to cross-examine the state chemist concerning the variability of partition ratios would be inconsistent with the statutory scheme and lead to jury confusion. . . . [A]llowing testimony on the variability of partition ratios would not prevent the jury from accepting the statutory inference. Because defendant is charged with driving while under the influence rather than driving with an alcohol concentration exceeding the statutory limit, admitting scientifically accepted evidence concerning the variability of partition ratios will not negate a statutory offense or even an element of a statutory offense; rather, it will merely allow defendant to challenge the permissive inference and the State's charge that he was impaired." (Hanks, supra,772 A.2d at pp. 1092-1093.) The Arizona Court of Appeal, relying in part on Hanks, came to the same conclusion in Guthrie v. Jones (2002)202 Ariz. 273, 276-277 [43 P.3d 601].
 Although, as we explain below, we do not agree with Hanks and Guthrie
to the extent that those decisions would allow general partition ratio evidence as well as personal partition ratio evidence, we agree with their essential analysis that partition ratio evidence can be admitted to challenge the inference of intoxication without affecting the basic fact supporting the inference.
 Because evidence is admissible to challenge the ultimate fact of intoxication under the generic DUI statute, and personal partition ratio evidence is relevant to that fact, we hold that a defendant may introduce otherwise admissible evidence of his personal partition ratio in defense of a generic DUI charge.[10]
E. General Partition Ratio Evidence
 Our record does not reflect whether defendant sought to introduce evidence of his personal partition ratio or merely evidence of the variability of partition *Page 600 ratios in the general population. To the extent that he sought to introduce general partition ratio evidence, we believe that such evidence is irrelevant and inadmissible.
 Defendant relies upon Lepine, supra, 215 Cal.App.3d 91. In Lepine, the defendant sought to introduce general partition ratio evidence in a per se DUI case prior to the Legislature's amendment defining blood-alcohol content to include breath-alcohol content. At that time, the standard partition ratio was set forth in regulations promulgated by the Department of Health. (See Cal. Code Regs., tit. 17, § 1220.4, subd. (f).) Prior to Lepine, courts had allowed personal partition ratio evidence in per se DUI cases, but not general partition ratio evidence. (See Bransford, supra, 8 Cal.4th at 889.) Lepine held that general partition ratio evidence could also be admitted in such cases. AlthoughLepine was a per se DUI case, its holding would appear to be applicable by analogy. However, a close reading of the case compels a contrary conclusion here.
 In Lepine, the Attorney General argued against the admissibility of general partition ratio evidence on the basis that the Department of Health regulations establishing the partition ratio "created a presumed fact that could only be challenged by a defendant presenting evidence that his particular partition ratio was less than that defined in the regulation." (Lepine, supra, 215 Cal.App.3d at p. 98.) The Lepine court rejected the Attorney General's argument, explaining: "There is nothing in either the Health and Safety Code section delegating to the department the power to create standards or in the regulations produced pursuant to that delegation which evidences a legislative intent to create a presumed fact. The Attorney General cites no case so finding. Nor does he suggest a canon of statutory construction which would compel the conclusion it was the Legislature's intention to create such an unassailable scientific standard so central to the proof of a serious crime. Where the Legislature has established presumptions affecting crimes involving the use of alcohol, it has done so directly and unambiguously. [Citations.] We find no such directive in the Legislature's general delegation of responsibility to set standards for the performance of breath alcohol tests." (Lepine, supra, at p. 98.)
 The Lepine court's rationale indicates that if the standard partition ratio was established as a presumption by the Legislature, rather than an unauthorized regulation, it would have come to a contrary conclusion. The direct and unambiguous legislative statement the Lepine court found missing in the regulations now exists in sections 23610 and 23152(b). Indeed, as the legislative history of the amendments redefining blood alcohol to include breath alcohol (discussed above and in Ireland) make clear, the Legislature sought to limit, if not eliminate, partition ratio evidence in DUI cases. In light *Page 601 of these amendments and the legislative history behind them, we viewLepine as strong support for limiting partition ratio evidence to personal partition ratio evidence.
 Moreover, subdivision (c) of section 23610, permits "the introduction of any other competent evidence bearing upon the question of whether theperson . . . was under the influence of an alcoholic beverage at the time of the alleged offense." (Italics added.) Construed in light of the legislative history of the statute, the reference to "whether the person . . . was under the influence" appears to us to limit partition ratio evidence to personal partition ratio evidence. General partition ratio evidence does not, we conclude, have any bearing upon whether the defendant in a particular case was under the influence. It is therefore irrelevant and inadmissible for this purpose.[11]
F. Conclusion
 To the extent that the defendant in this case sought to introduce evidence of his personal partition ratio as evidence that he was not under the influence of alcohol, the trial court abused its discretion in determining that such evidence was inadmissible. Because the only reason apparent in the record for denying defendant's motion to reopen the case was the erroneous evidentiary ruling, the denial of the motion to reopen would also be an abuse of discretion. If, however, defendant sought to introduce general partition ratio evidence, the court's evidentiary ruling was not erroneous and the denial of the motion to reopen was not an abuse of discretion.
 As stated above, we cannot discern from the record whether defendant sought to introduce evidence of general variability of partition ratios or of his own partition ratio. "`"For an appeal to engage the consideration of an appellate court, it must be brought up on a record which, in addition to being otherwise formally sufficient, shows the error calling for correction. Such error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him." This basic rule is a corollary of the equally fundamental principle that all presumptions and intendments are in favor of the regularity of the action of the lower court in the absence of a record to the contrary.'" (People v. Green (1979) 95 Cal.App.3d 991,1001 [157 Cal.Rptr. 520], quoting People v. Clifton (1969)270 Cal.App.2d 860, 862 [76 Cal.Rptr. 193].) Because defendant has failed to make a sufficient record of his offer of proof with respect to the type of partition ratio evidence he sought to introduce, he has failed to demonstrate error. *Page 602 
 Nevertheless, as we explain in the next part, even if defendant had proffered evidence of his personal partition ratio and made a sufficient record of doing so, any error was harmless.
G. Harmless Error
 "As a general matter, the `[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.]" (People v. Fudge (1994) 7 Cal.4th 1075,1102-1103 [31 Cal.Rptr.2d 321, 875 P.2d 36].) Here, defendant was not precluded from presenting his defense that he was not under the influence; "`but [rather there was] only a rejection of some evidence concerning the defense.' [Citation.] Accordingly, the proper standard of review is that announced in People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243], and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension (Chapman v. California
(1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065])." (Id. at p. 1103.) Under Watson, an error is not harmless "only when the court, `after an examination of the entire cause, including the evidence,' is of the `opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (People v. Watson, supra, at p. 836.)
 Here, there is strong evidence that, regardless of his blood-alcohol level, defendant was under the influence of alcohol. Defendant was pulled over slightly before 11:00 p.m. Officer Herrera initially observed him on the Tennessee Avenue transition road. Defendant slowed down to make a right-hand turn onto Tennessee Avenue. Defendant ran the stop sign. Shortly after this, he slowed for a red light at the intersection of Tennessee Avenue and Colton. Defendant proceeded into the intersection and made a left-hand turn, against the red turn arrow. After approaching the vehicle, Officer Herrera asked for defendant's driver's license and registration. Defendant could not initially find his driver's license. When asked why he ran the red light, defendant initially responded that he was chasing an individual who had pulled a gun on him. He thereafter said that he was either looking for his wife, or that his wife was right behind him. Defendant's speech was slurred, his eyes were watery and bloodshot, and there was an odor of alcohol coming from the interior of defendant's car. Upon exiting his vehicle, defendant used the vehicle to balance himself as he walked around his car to the sidewalk. Defendant told the officer that he had consumed one beer and that he had diabetes. Defendant's performances on the Romberg, heel-to-toe, one leg, and finger-to-nose sobriety tests were all consistent with being under the influence of alcohol. Additionally, the PAS (prelimirary alcohol-screening) test showed the presence of alcohol. Officer Herrera wrote in his report that defendant's *Page 603 face was flushed and that he had difficulty answering questions. The record thus demonstrates significant evidence of defendant's intoxication. Therefore, we believe that it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of any error.
 Moreover, it is probable that the jury did not use the 0.08 percent presumption in arriving at its verdict. As earlier noted, the jury was split on whether defendant was guilty of driving with a blood-alcohol level of 0.08 percent or greater under section 23152(b). Given this, it is unlikely that the jurors who rejected that charge employed the presumption of intoxication in arriving at their guilty verdict on the section 23152(a) charge.
 III. DISPOSITION
The judgment is affirmed.
Ramirez, P. J., and Richli, J., concurred.
[1]All further statutory references are to the Vehicle Code unless otherwise indicated.
[2]Section 23152(a) provides: "It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle."
 Section 23152(b) provides: "It is unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle, [¶] For purposes of this article . . ., percent, by weight, of alcohol in a person's blood is based upon grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath, [¶] In any prosecution under this subdivision, it is a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving."
[3]Effective January 1, 2007, California Rules of Court, rules 62 and 64 were renumbered rules 8.1002 and 8.1008, respectively, without substantive change.
[4] The Bransford court reviewed the legislative history of section 23152. In 1981, the Legislature enacted section 23152(b), making it a crime for individuals to drive with a blood-alcohol level of 0.10 percent or greater. At that time, section 23152(b) provided, "percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood." (Bransford, supra, 8 Cal.4th at p. 888, fn. 2, citing Stats. 1981, ch. 940, § 33, p. 3578.) In 1989, the blood-alcohol level was reduced from 0.10 to 0.08 percent. (Bransford, supra, at pp. 888-889 fn. 3, citing Stats. 1989, ch. 479, § 3, p. 1691.) During this time period it was necessary for the prosecution to convert breath-alcohol test results into equivalent readings per 100 milliliters of blood. (Bransford, supra, at pp. 888-889.) To that end California Code of Regulations, title 17, section 1220.4, subdivision (f), provided that the conversion standard would be: 210 liters of breath was the equivalent to the amount of alcohol in 100 milliliters of blood. (Bransford, supra, at p. 889.)
In that many individual variables, such as body temperature and medical conditions, affect the accuracy of the conversion from breath to blood, courts allowed evidence showing the variability of and allowed attack on the accuracy of the conversion. (Bransford, supra, 8 Cal.4th at p. 889.) In 1990, the Legislature amended section 23152(b) from simply "`[f]or purposes of the subdivision percent, by weight, of alcohol shall be based upon grams of alcohol per 100 milliliters of blood,'" to "`[f]or purposes of this subdivision, percent, by weight, of alcohol in a person's blood
shall be based upon grams of alcohol per 100 milliliters of blood orgrams of alcohol per 210 liters of breath.'" (Bransford, supra, at pp. 888-889, fn. 3; id. at p. 890, quoting Stats. 1990, ch. 708, § 1, pp. 3289-3290.)
[5]Here, the jury was instructed, "If the evidence establishes beyond a reasonable doubt that at the time of the chemical analysis of the defendant's blood, breath or urine there was .08 percent or more, by weight, of alcohol in the defendant's blood, you may, but are not required, to infer that the defendant was under the influence of an alcoholic beverage at the time of the alleged offense."
[6]"Henry's Law states that `at constant temperature, the concentration of a gas dissolved in a liquid is proportional to the concentration of that same gas in air directly above that liquid.'" (Schop, supra, 20 Sw.U. L.Rev. at pp. 255-256, fn. omitted.)
[7]The People have requested judicial notice of certain legislative history materials concerning 1989 Senate Bill No. 1119 (1989-1990 Reg. Sess.) and 1990 Assembly Bill No. 4318 (1989-1990 Reg. Sess.). We grant the request. (Evid. Code, §§ 452, subd. (d), 459.)
[8]Although the amendment to former section 23155 was enacted in 1989, it was to become effective in 1992. (Stats. 1989, ch. 1114, § 34, pp. 4085-4086.) The 1990 amendment to section 23152(b) was not delayed.
[9]The People argue that the word "other," as a modifier of the phrase "competent evidence," was intended to exclude personal partition ratio evidence. The assertion is unsupported. Read in the context of the entire statute, "other competent evidence" refers to competent evidence other than evidence of the statutory partition ratio set forth in subdivision (b) of section 23610. Because a defendant's personal partition ratio is evidence "other" than the statutory partition ratio, it is admissible under the plain language of subdivision (c).
[10]Because it is defendant in this case who sought to introduce partition ratio evidence to prove his innocence, our holding is stated in this context. We do not suggest, as the People contend, that our holding would permit the defendant, but not the People, to introduce a defendant's personal partition ratio into evidence. Because the question is not before us, we express no view as to whether the People can introduce a defendant's personal partition ratio as evidence of guilt.
[11]As the People point out, evidence of a defendant's personal partition ratio may, as a practical matter, require foundational testimony concerning the general nature of partition ratios. We do not hold, as the People suggest, that testimony regarding general partition ratios cannot be presented for such purposes. (See, e.g., Evid. Code, § 801, subd. (b) [expert testimony can be based on matter "whether or not admissible"].) Rather, we hold merely that general partition ratio evidence is not relevant or admissible on the issue of whether the defendant was or was not intoxicated. Whether general partition ratio evidence may be admissible for other purposes is not before us. *Page 604